A. B. LONERGAN AND F. L. KENDRICK, *Appellant*, v. J. O. PEEBLES AND ALICE L. PEEBLES, HIS WIFE; THE BANKING, SAVINGS AND TRUST COMPANY, A CORPORATION, AND J. H. SOUTHWICK. *Appellees.*

Opinion Filed February 18, 1919.

Petition for rehearing denied March 19, 1919.

1.  In an equity proceeding when the defendant in his answer sets up an affirmative or substantive defense the burden is upon him to establish it.

2.  In a bill to foreclose a mortgage given to secure the payment of certain promissory notes for the purchase price of the land mortgaged, one of the defendants answered that the plaintiff held two of the notes which were endorsed to him by defendant payee, that at the time of such endorsement

which was a qualified endorsement, it was agreed between plaintiff and defendant that if the maker should fail to pay the notes held by the plaintiff at maturity, the latter should have no benefit of the mortgage lien upon the land. *Held,* that the burden of proof was upon the defendant setting up such defense.

3. A decree which is not supported by the evidence and clearly appears to be erroneous, will be reversed.

An Appeal from the Circuit Court for Santa Rosa County, A. G. Campbell, Judge.

Decree reversed.

*H. S. Laird and Smith & Wilkinson,* for Appellants.

*Watson & Pasco,* for Appellees.

ELLIS, J.—This is a suit to enforce a mortgage lien given to secure the payment of five promisory notes, brought by the appellants who were complainants below and who are the holders of two of the notes. Each note held by the appellants is for the sum of twelve hundred dollars, dated September 1, 1914, one payable on December 1, 1915, and the other payable December 1, 1916, at Pensacola, Florida. Two of the remaining three notes were for the sum of thirty-eight hundred dollars each, one payable December 1, 1915, and the other payable December 1, 1916. The remaining note was for the sum of five thousand dollars and payable December 1. 1917. Each note was made by J. O. Peebles, and payable to the order of J. H. Smithwick.

In order to secure the payment of these promissory notes J. O. Peebles and his wife, Alice L. Peebles, exe-

cuted and delivered to J. H. Smithwick a mortgage upon a certain tract of land containing six hundred and forty acres located in Santa Rosa county, Florida. The mortgage contained a clause to the effect that if the indebtedness or any part of it should not be paid according to the terms of the notes, then the indebtedness covered by the mortgage should become due and payable within sixty days and the mortgage should become "immediately foreclosable for the sums secured" thereby.

On September 9, 1914, J. H. Smithwick endorsed the two notes for twelve hundred dollars each to Lonergan & Kendrick Realty Company, a corporation, without recourse, and on the 25th day of September, 1915, that corporation, by its president A. B. Lonergan, endorsed the notes to A. B. Lonergan and F. L. Kendrick.

J. H. Smithwick's endorsement was in the following words: "Pay to the order of Lonergan & Kendrick Realty Company, Inc., without recourse, this 9th day of Sept. 1914. J. H. Smithwick." The transfer of the notes under this endorsement took place in Birmingham, Alabama.

Some days later the three remaining notes were endorsed by J. H. Smithwick to the Banking, Savings & Trust Company, a Florida corporation doing business at Pensacola. After that transaction, or about the same time, on September 25, 1914, the mortgage was filed for record and duly recorded in the public records of Santa Rosa County, Florida.

The bill of complaint was filed on April 29, 1916, and alleged that J. O. Peebles failed and refused to pay the note for twelve hundred dollars due December 1, 1915. The prayer is for an accounting of the amount due upon

the notes and mortgage and that J. O. Peebles be decreed to pay to the complainants and to the Banking, Savings and Trust Company and to J. H. Smithwick whatever sum is found to be due each, together with the costs and attorney's fees, and in default of such payment that the lands described be sold to satisfy the indebtedness, etc.

A decree *pro confesso* was entered against J. O. Peebles and wife, but the Bank and Smithwick answered admitting execution and delivery of the notes and mortgage, the endorsement of the two notes by Smithwick as alleged, and the transfer to the complainants and the endorsement of the remaining three notes to the Bank by Smithwick and the failure of Peebles to pay, but the defendants averred that when Smithwick endorsed the notes to Lonergan & Kendrick Company it was understood and agreed between Smithwick and the endorsee the Lonergan & Kendrick Realty Company it was understood and agreed between Smithwick and the endorsee, the Lonergan & Kendrick Realty Company, that if the maker of the notes should fail to pay the same when due that the two notes were not to participate in or have any benefit of the lien of the mortgage. The answer was afterwards amended by adding the following averment:

"That the said Banking, Savings & Trust Company at the time of the negotiation by the said Smithwick to the transferor of the complainants of the notes held by the complainants, held, as the complainants and their transferor then knew, prior mortgage made by the said Smithwick on the property against which foreclosure is here sought; that at the time of the negotiation of the notes held by the complainants they and their transferor were

informed by said Smithwick, and assented thereto, that
the remaining notes were to be transferred to Banking,
Savings & Trust Company, and were to have a superior
right under the mortgage sought to be foreclosed, and
that the then existing mortgages in the hands of Bank-
ing, Savings & Trust Company would not be cancelled by
it unless its rights of priority was preserved; that the
said remaining notes were thereafter negotiated to said
Banking, Savings & Trust Company. and accepted by it
in the belief and with the intent that they should be en-
titled to priority of security in its hands, and on the
faith that it would have a priority it took the said notes
and an assignment from said Smithwick of the said mort-
gage made by the said Peebles in the place and stead of
the mortgages then held by it, and in the belief that the
priority held by it by reason of such mortgages would
be and was preserved to it in taking the notes of the
said Peebles, and the assignment of said mortgage from
said Smithwick, it therefore cancelled its prior mort-
gages; that it never was the intention or design of any
of the parties to this suit that the cancellation of its
said mortgages by said Banking, Savings & Trust Com-
pany should put it in a worse position than it was prior
to such cancellation, wherefore it says that the notes
held by it are entitled to priority of security of payment
from the mortgaged property."

It appears from the pleadings and testimony in the case
that Mr. Smithwick who was the owner of the land de-
scribed in the bill and another tract in the same county
desired to sell the same, and to that end employed the
Lonergan & Kendrick Realty Company, a corporation do-
ing business in Birmingham, Alabama, to find a pur-
chaser. The Lonergan & Kendrick Realty Company pro-

duced Mr. J. O. Peebles and a trade was made between him and Mr. Smithwick. A small part of the purchase price was paid in cash by Mr. Peebles, a portion of it paid by a conveyance of certain lots in Birmingham to Mr. Smithwick, and the remainder of the purchase price which was represented by the five promissory notes was it seems secured by the mortgage described in the bill and another mortgage upon the other tract of land upon which there was some incumbrances held by the defendant bank which Mr. Smithwick was to remove.

The commission earned by the Lonergan & Kendrick Realty Company was paid by the endorsement to it of the two notes mentioned without recourse, and the conveyance to it of certain of the lots in Birmingham.

It is clearly apparent from the circumstances of the transaction why Mr. Smithwick should wish to protect himself against the possible failure of Mr. Peebles to pay the two notes at maturity. because in such an event it might become necessary for him to foreclose the two mortgages to collect the remaining three notes in which case it might become necessary for him to purchase the lands at foreclosure sale, which would leave him practically in the same situation he was in before the sale, with little or no margin of profit after paying all the expenses incident to a foreclosure proceeding except that represented by the small amount of cash received and the value of the lots in Birmingham, out of which Lonergan & Kendrick Realty Company had received part of their commission as stated.

It is also apparent why the defendant bank would have under the circumstances insisted upon its lien being superior to the complainants' lien in the event it should

13—Vol. 77.

become necessary to resort to the security for the collection of the notes against Mr. Peebles.

Whether the understanding and agreement between Mr. Smithwick and the Lonergan & Kendrick Realty Company was actually entered into between them before or at the time of the endorsement of the two notes to the latter, and whether such an agreement could be shown or established by oral evidence is fully presented by the record.    The answer of Mr. Smithwick and the bank does not aver that the agreement was in writing and the evidence adduced in behalf of the defendants tends to show that the agreement, if it existed at all, which was denied by the testimony of both Mr. Lonergan and Mr. Kendrick, was a verbal agreement or understanding.

The Chancellor found for the defendants, in that he held that while the complainants were entitled to a foreclosure of the mortgage their lien was inferior to that of the bank which held the remaining three notes aggregating twelve thousand six hundred dollars.    That the complainants had the right to "redeem and pay off the superior lien of the said Banking, Savings & Trust Company under said mortgages by paying to it the amount of the notes held by it" with interest.    That the defendant J. O. Peebles was indebted to the complainants in the amount of twenty-four hundred dollars and interest and attorney's fees, "for all of which the complainants have a lien under the said mortgage subordinate in dignity to the lien of the said mortgage for the security of the notes held by the defendant The Banking, Savings & Trust Company and secured by the said mortgage."    The decree ordered this sum to be paid to the complainants and in default thereof that the lands be sold, but the sale should

be subject "in all respect to the prior right and lien of the defendant, The Banking, Savings & Trust Company. and the title acquired by any purchaser at, or by reason of any such sale, shall be deemed to be subordinate to the right and lien of the said The Banking, Savings & Trust Company," etc. From this decree the complainants appealed.

The effect of the decree is merely to establish the priority of the bank's lien over that of the complainants. The Chancellor did not find that there was any agreement or understanding between Mr. Smithwick and the Lonergan & Kendrick Realty Company that the latter was to have no benefit of the mortgage lien in the event Mr. Peebles failed to pay the notes at maturity, but did hold that as between Lonergan & Kendrick Realty Company and the bank, the lien of the latter was superior.

In order to arrive at this conclusion there should have been some substantial evidence to support the averments contained in the amendment to the answer quoted at length above. Those averments were made in the interest of the bank and constituted an affirmative or sub-stantive defense which it was the business of the defendants Smithwick and the bank to establsh. See Davis v. Horne, 57 Fla. 396, 49 South. Rep. 505; Orman, Admr. v. Barnard, Adams & Co., 5 Fla. 528; Pinney v. Pinney, 46 Fla. 559. 35 South. Rep. 95; Griffith v. Henderson, 55 Fla. 625. 45 South. Rep. 1003; Tyler v. Toph, 51 Fla. 597, 40. South. Rep. 624. This principle of equity practice has been invariably recognized in this State from its earliest judicial history.

There is no allegation in the bill touching the agreement between Lonergan & Kendrick Realty Company

and Mr. Smithwick for the benefit of the bank, and the averment of the answer as amended must therefore be taken as new and substantive matter in avoidance of the complainants' equity so far as it affects the bank. Mr. Smithwick's testimony was positive in the following words: "I made Lonergan the proposition to accept the thirty *lots* at a valuation of $9,000.00, and give him ten per cent (10%), or three lots as his part of the commission and deliver to him the two notes in question with the understanding that if Peebles did not pay the notes, that Lonergan should have no recourse on either me or the lots for the balance of the commission; Lonergan balked on this proposition, but finally agreed to take four lots if I would let him pick them. and we closed on that basis —and it was on September 9th."

The word "lots" in this testimony has reference to the lots in Birmingham, which were conveyed by Mr. Peebles to Mr. Smithwick as part of the purchase price for the lands in Santa Rosa County, Florida. Mr. Smithwick also testified as follows: "At the time these negotiations were going on, I explained to A. B. Lonergan that the Chaffin Bank, of Milton, Florida, and The Banking, Savings & Trust Company, Pensacola, Florida, had blanket mortgages on the Brewster Grant. the land described in the mortgage. I furnished him an abstract of the property also. I told him that it was my purpose to assign the mortgage in question together with the other notes, described therein, to The Banking, Savings & Trust Company for money sufficient to cancel the outstanding mortgages, and that I would be unable to make this negotiation with the said bank if the two notes in question should be endorsed with recourse. Q. Did you at that time endorse these two notes that were delivered to Lon-

ergan without recourse? A. Yes, sir. and when I did so, I explained to Mr. Lonergan that I meant without recourse on the land as well as on myself. and he so understood. Q. Did you or not inform Mr. Lonergan that you would have to be able to assure the Banking, Savings & Trust Company that his notes were not to participate in the mortgage, in order to get the other mortgages cancelled? A. I did. Q. Did he make any objections to you so informing him? A. No, sir. Q. Was it not understood that was your way of paying these mortgages? A. I explained to him very clearly that it was my only way of paying those mortgages. Money was hard to get, and that was my only collateral. Q. Did you transfer the remaining notes and mortgages to the Banking, Savings & Trust Company?. A. I did. Q. With whom did you deal? A. J. D. C. Newton, the Cashier. Q. Did you or not at the time of the transfer, inform Mr. Newton of the understanding with Lonergan that his notes were not to have the benefit of the lien of the mortgage? A. J did. I explained to him fully that I had an agreement with Lonergan, that if Peebles defaulted in his payment, that the only liens against the land would be the $12,600 left after deducting the $2,400.00 sued for. Q. By the $2,400.00 sued for, you mean the two notes that were made over to Lonergan? .A. That is the two notes, which they are claiming in their bill. Q. You say that this mortgage and these notes for $12,700.00 were turned over to Newton for the Banking. Savings & Trust Company to retire older mortgages? A. Yes. Q. Upon the faith of that transfer in your statement to Newton, did he cancel or cause the cancellation of the older mortgages? A. Yes, sir. Q. Was that before or after the transfer of the two $1200.00 notes to the Lonergan & Kendrick Realty Company? A. Yes, sir—it was after.

Q.  These older mortgages you say were held by the Chaffin Bank, and Banking, Savings & Trust Company?   A. Yes. sir."

Mr. Newton, Cashier of the bank who acted for the bank in acquiring the three Peebles notes from Mr. Smithwick, tesified that it was his understanding that in the event Peebles made default that "Lonergan & Kendrick's notes were not to have the benefit of the mortgage," and that Mr. Smithwick gave him that information.   He also testified as follows: "Q. At the time of making that cancellation and of taking the assignment of the Peebles mortgage. did you have any knowledge that Lonergan & Kendrick, or Lonergan & Kendrick Realty Company claimed any benefits of this Peebles mortgage? A. Why, only knew that there were two notes out; I asked Mr. Smithwick where these two notes were, and he simply told me that they held the two notes in the event the deal wasn't carried out that they would be returned to him and would not be paid, were not to be paid.   Q. Then it was your understanding from Smithwick that your notes and mortgage, which you were taking, were ahead of the two notes that Peebles—that Lonergan & Kendrick or Lonergan & Kendrick Realty Company held? A.  Yes.   Q.  It was upon that understanding that you executed the cancellation?   A.  I can't say ahead of it; my understanding was simply this: That if the Peebles fell down those notes were void, they were not to be paid; it was a commission allowance made to those people for making the sale.   Q.  By the Peebles falling down, do you mean if Peebles failed in his payments? A. Yes, failed to make his payments.   Q.  In other words—   A. In other words, I thought I had a first mortgage for the amount of the notes that I held, at least $12,500.00.   Q.

And your understanding was that the two notes that were out were not to come in ahead of or with your notes? A. Were given by him as a commission on the sale and would not be collected if Peebles failed to carry out his contract, to meet his payments. Q. Failed to meet his payments? A. Yes, sir."

The testimony of Mr. Smithwick as to any understanding or agreement between him and Mr. Lonergan at the time of the transfer of the two notes to the Lonergan & Kendrick Realty Company, to the effect that the latter was to have no lien upon the land in case the maker of the notes failed to pay was denied by both Mr. Lonergan and Mr. Kendrick. They also testified that they had no communication whatever with the Banking, Savings & Trust Company about the matter and that testimony was uncontradicted.

Now the Chancellor did not accept Mr. Smithwick's account of the agreement, and the testimony of Mr. Newton was not at all clear as to his understanding from Mr. Smithwick as to what would become of the two notes held by the Lonergan & Kendrick Realty Company in the event Mr. Peebles should make default in payment. At one time he said that Mr. Smithwick "simply told me that they held the two notes, but in the event the *deal* wasn't carried out that they would be returned to him and would not be paid, were not to be paid." At another time he said that he could not say that the bank's notes were to be "ahead" of the two notes that Lonergan & Kendrick held, but that if "Peebles fell down those notes were void, they were not to be paid;" at still another time he said: "I thought I had a first mortgage for the amount of the notes that I held, at least

$12,500.00," and finally in answer to the following leading question: "And your understanding was that the two notes that were out were not to come in ahead of or with your notes," he replied, apparently refusing to be lead, as follows: "Were given by him as a commission on te sale and would not be collected if Peebles failed to carry out his contract, to meet his payments." He evidently had no clear understanding of the agreement which according to Mr. Smithwick the latter had with Mr. Lonergan and what he did say concerning his understanding of it was very different from the Chancellor's finding.

Now the endorsement of the notes by Mr. Smithwick to Lonergan & Kendrick Realty Company was a qualified endorsement, but it carried with it under the Negotiable Instruments Law of this State the warranty of Mr. Smithwick, that the instrument was genuine and in all respects what it purported to be; that he had a good title to it; that all prior parties had capacity to contract and that he had no knowledge of any fact which would impair the validity of the instrument or render it valueless. See Section 2998, General Statutes, 1906, Compiled Laws, 1914. If, however, under the agreement Mr. Smithwick had the right to retake possession of the notes or declare them to be void and uncollectable if Mr. Peebles should fail to pay, as Mr. Newton seemed to understand, then Mr. Smithwick's endorsement of the notes was conditional, or very different in effect from that which the words written by him on the back of the notes have under the provisions of the Negotiable Instruments Law of this State. There is nothing in the record to show what effect the law of Alabama gives to such an endorsement and delivery as were made by Mr. Smith-

wick, but in this State it passed the title of the notes to the endorsee and gave to it the right to have recourse to the mortgage given to secure the payment of the notes upon the failure of the maker to pay. See Stewart v. Preston, 1 Fla. 10; Carter v. Bennett, 4 Fla. 283; Taylor v. American Nat. Bank of Pensacola, Fla., 63 Fla. 631, 57 South. Rep. 678; First Nat. Bank of Quincy v. Guyton, 72 Fla. 43, 72 South. Rep. 460.

We will not decide the question in this case as to whether oral evidence is permissible to vary or change the effect of the contract of endorsement, nor whether Lonergan and Kendrick's transferor was estopped from asserting its right to foreclose the mortgage so far as the bank was concerned, because whatever may be the correct rule in the case upon that subject, we are of the opinion that if the defense set up by the answer could be made at all, it was incumbent upon the defendants to establish it with clearness, certainty and definiteness by a preponderance of the evidence, and that they have wholly failed to do so.

We think therefore that the decree should be reversed and it is so ordered with directions to enter a decree of foreclosure in accordance with the prayer of the complainants in so far as an enforcement of the mortgage lien is sought, and direct an application of the proceeds of the sale of the property after the payment of costs and expenses to the payment of the indebtedness represented by the five notes, and if the sum realized at the sale is not sufficient to pay the indebtedness in its entirety, that the proceeds shall be distributed between the complainants and the bank in proportion to the amount of indebtedness held by each.

TAYLOR AND WHITFIELD, J. J., concur.

BROWNE, C. J., absent.

WEST, J., not participating.