W. E. ELLIS v. NEW PORT RICHEY COUNTRY CLUB, INC., *et al.*

155 So. 730.

Division B.

Opinion Filed June 15, 1934.

■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■

*H. M. Hampton,* for Appellant;

*Jones & White,* for Appellee.

BUFORD, J.—On the 11th day of December, 1930, W. E. Ellis filed a bill of complaint in the Circuit Court of Pasco County wherein New Port Richey Country Club, Inc., a corporation under the laws of Florida, and a large number of persons who were stockholders in that corporation were made defendants.

The bill of complaint alleged that in the year 1925 the defendants desired to construct a golf course at New Port Richey and for the purpose of constructing same agreed to form a corporation, and did form a corporation, known

as New Port Richey Country Club, Inc., and that before incorporating the individuals named as defendant other than one Bowden subscribed to certain shares or interests in the corporation to be formed, each subscribing for $1200.00 of stock or shares in such corporation, such stock or shares being denominative units, and agreed to pay therefor the sum of $1200.00 in installments of $100.00 per month. The corporation was formed. The persons named defendants continued to make payments on account thereof as per their agreement, but each of such persons made only a small number of payments and that the greater number of payments promised were never made and that the New Port Richey Country Club ceased to function.

That while the corporation was in existence and while the individuals named were each subscribers to units of said corporation and were subscribers to capital stock, the said Bowden who had heretofore contracted to sell the corporation the property upon which the golf course was to be built, by and with the consent of the corporation, on December 19, 1925, borrowed from Georgia Farm Loan Company $31,000 and executed and delivered his mortgage and note upon the property upon which the golf course was to be constructed and that to induce Georgia Farm Loan Company to make the loan New Port Richey Country Club, Inc., executed and delivered to Georgia Farm Loan Company its certain guaranty by the terms of which it guaranteed to the said Georgia Farm Loan Company the payment of said $31,000.00 in installments of $500.00 per month; that thereafter Georgia Farm Loan Company became insolvent and went into bankruptcy and that the Trustee in Bankruptcy sold, assigned and transferred the notes and mortgage to Commercial Bank & Trust Company of Ocala as Trustee. Thereafter, payments being in default under the

terms of the notes and mortgage, the assignee commenced a suit in the Circuit Court of Pasco County to foreclose the mortgage, the same being filed on the 24th day of September, 1927, which was one year, nine months and five days from the date of the notes and mortgage. Final decree was entered in that suit on December 28, 1929.

After decree the property embraced in the mortgage was sold and after the sale and distribution of the funds so realized there was a balance left due and owing upon the notes and mortgage of $37,310.55. That thereafter Commercial Bank & Trust Company of Ocala sold, conveyed and transferred the obligation of Bowden as determined by the decree, together with the guarantee agreement of New Port Richey Country Club, Inc., to Bainbridge Richardson, who thereafter transferred, assigned and settled all rights so acquired by him to the complainant Ellis. Thereafter, Ellis commenced suit in the Circuit Court of Pasco County against New Port Richey Country Club, Inc., upon said note and the guaranty agreement above referred to, which suit resulted in a final judgment on November 30, 1930, in the sum of $42,159.20 and costs against the defendant. That execution issued on the judgment and was delivered to the Sheriff of Pasco County who immediately returned the same showing that no property was found and the execution was returned to the Clerk's Office unsatisfied. That New Port Richey Country Club, Inc., at the time of the issuance of the execution had no physical property anywhere.

It is alleged unless this suit be maintained against the stockholders under their statutory liability, nothing can be recovered under the judgment.

The bill alleges sufficient facts to show that the corporation was authorized to issue capital stock in the amount

which was issued; that the defendants subscribed for the stock and failed to pay for the same and still own large sums of money on their subscriptions to the stock. It is alleged that the amount of such balance owed by each subscriber to the corporation upon said stock subscription is unknown to the complainant.

The bill prays accounting, discovery and decree against each of the defendants.

A demurrer to the bill of complaint was sustained and the bill dismissed. From the order dismissing the bill of complaint appeal was taken.

The complainant bases his right to maintain the suit on the provisions of Chapter 10096, Acts of 1925, and especially under Section 14 of that Act, which now appears as Section 6540 C. G. L., Section 16 of the Act being Section 6542 C. G. L., provides as follows:

"No action shall be brought against the stockholders for any debt of the corporation until judgment therefor is recovered against the corporation and an execution thereon has been returned unsatisfied in whole or in part; Provided, it shall not be necessary to secure judgment against a corporation in the hands of a receiver, or which shall have been adjudged bankrupt. No stockholder shall be personally liable for any debt of the corporation not payable within two years from the time it is contracted, nor unless an action for its collection shall be brought against the corporation within two years after the debt becomes due; and no action shall be brought against the stockholder after he shall cease to be the owner of the shares, for any debt of the corporation, unless brought within two years from the time he shall have ceased to be a stockholder."

Under this provision it is necessary for the court to determine what amount became payable under the contract

within two years from the date of the contract. While the bill of complaint does not allege in terms that the whole amount of the indebtedness evidenced by the note and secured by the mortgage became due and payable within two years under the terms and conditions of the contract, the bill does allege that the original bill of complaint to foreclose the mortgage given to secure the notes was filed within two years from the date thereof and that final decree was entered for the full amount of the note which had matured under the acceleration clause because of defaults in the payment of installments. We think the allegations are sufficient to show that under the terms of the contract, the payment of which was guaranteed by New Port Richey Country Club, Inc., the entire obligation became due and payable within two years. It is sufficiently alleged that suit was commenced against New Port Richey Country Club, Inc., on April 15, 1930, which was within two years after December 28, 1929, which was the date of the final decree fixing the liability of the maker of the note and the mortgagor. But, the bill does not show that a suit was brought against the corporation, New Port Richey Country Club., Inc., within two years after the debt became due. The debt became due, under the contract of New Port Richey Country Club, Inc., when the acceleration clause contained in the note and mortgage was exercised by the holder thereof and suit was filed to foreclose the mortgage. If New Port Richey Country Club was made a party to the foreclosure suit, then suit was brought against the corporation within two years after the debt became due.

The complainant should have been allowed to amend his bill of complaint if he could do so so as to show that suit was brought against the corporation within two years after the debt became due, that is, within two years after the ac-

celeration clause contained in the note and mortgage was invoked. Unless the bill could be so amended, then the action against the corporation is barred by the provisions of Section 16 of Chapter 10096, Acts of 1923, Section 6542, C. G. L.

If the bill of complaint can be amended so as to show this necessary fact then we think that it would present a cause of action cognizable in a court of equity for the relief prayed. See Webster v. 759 Riverside Ave., Inc., et al., filed November 25, 1933, reported 151 Sou. 276, wherein we said:

"By default the corporation itself made the note to become due within two years from the time the debt was contracted. As Judge Park said in Carlon v. Kenealy, *supra,* the default was not a contingency affecting the negotiability of the note, but by the maker's own act, his default, he makes the note to become due."

For the reasons stated, the decree should be reversed insofar as it dismisses the bill of complaint, but should be affirmed insofar as it sustains the demurrer to the bill of complaint and the cause is remanded with directions that complainants be allowed to amend their bill of complaint as herein indicated if they can, and, failing to so amend, that the bill be dismissed. The costs of this appeal shall be taxed equally against the appellants and the appelllees.

It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur in the opinion and judgment.