Twenty-Third Street Realty Corporation, etc., v. City of Miami Beach, etc.; Roney Investment Company v. City of Miami Beach; Roney Investment Company and Twenty-Third Street Realty Corporation v. City of Miami Beach.

191 So. 464
Division A
Opinion Filed October 13, 1939

*E. L. Lockhart,* for Appellant;

*Ben Shepard, Charles M. Moon, Stuart MacKenzie* and *A. N. Spence,* for Appellees.

*Stapp, Gourley, Ward & Ward* and *K. D. Harris* as *Amici Curiae.*

Buford, J.—On the 4th day of January, 1916, a dedication declaration was made and executed by the land owners on a plat of a subdivision identified as Amended Map

of "The Ocean Front Property of the Miami Beach Improvement Company."

The record shows conclusively that there was never any formal or record acceptance of the dedication on behalf of the Municipality or of the County in which the subdivision was located. Therefore, unless the dedication became consummated by user, there was no dedication of the streets described on the plat and involved in this suit.

On May 29th, 1917, Ordinance No. 99 was adopted, as follows :·

"ORDINANCE No. 99.

"An Ordinance Vacating a Portion of Certain Streets and Alleys in the Town of Miami Beach, Dade County, Florida, as the Same are Designated Upon the Amended Map of the Ocean Front Property of the Miami Beach Improvement Company, Recorded in Plat Book 5, at Pages 7 and 8 in the Office of the Clerk of the Circuit Court in and for Dade County, Florida.

"BE IT ORDAINED by the Town Council of the Town of Miami Beach, Florida, that:

"Section 1. The following described portions of streets, alleys and highways lying and being within the corporate limits of said Town, according to the Amended Map of the Ocean Front Property of the Miami Beach Improvement Company, recorded in Plat Book 5, at pages 7 and 8 in the office of the Clerk of the Circuit Court in and for Dade County, Florida, be and the same are hereby vacated, discontinued and abolished.

"(a)  That portion of Miami Beach Drive lying between the south boundary line of that street or thoroughfare designated on said plat as 'Hotel Place' produced eastwardly across said Miami Beach Drive, as a northern boundary of the tract herein vacated, and the south boundary line of the block designated on said plat as 'Hotel·Site' produced east-

wardly across said Drive as a southern boundary of the tract herein vacated.

. "(b)   That certain alley extending from the south line of Seventh Street southwardly through Block Thirteen (13) to the north boundary line of Sixth Street, according to the place aforesaid.

"(c)   That certain alley extending from the south line of Sixth Street southwardly through Block Eleven (11) to its point of intersection with the circular street lying to the south of said block.

"Section 2.   This ordinance shall take effect immediately after its passage, after posting at the Town Hall of said Town for a period of four weeks.

"Section 3.   All ordinances or parts of ordinances in conflict herewith are hereby repealed.

"Read the first and second time May 1st, 1917.

"Third and final reading May 15th, 1917.

"Signed)   Thos.  J.  Pancoast,

"President of Council."

"Attest:

"(Signed)  J. F. Canova, Town Clerk.

"Approved this 29th day of May, A. D. 1917.

"(Signed)  P. N. Lummus, Mayor."

The area described in paragraph (A) of Section 1 of the Ordinance is one of the parcels of property involved in this suit.

On the 20th day of March, 1917, the following Ordinance was passed:

"Ordinance No. 96.

"An Ordinance Vacating a Portion of Atlantic Avenue and a Portion of Ocean Front Walk of the Town of Miami Beach, Dade County, Florida.

"Be It Ordained by the Town Council of the Town of Miami Beach, Florida, that:

"Section 1. The following described portions of streets and sidewalks lying and being within the corporate limits of said Town, according to the plat of said streets and sidewalks recorded in Plat Book 5 at pages 7 and 8 in the office of the Clerk of the Circuit Court in and for Dade County, Florida, be and the same are hereby vacated, discontinued and abolished.

"(a) That portion of Atlantic Avenue lying and being between the east line of Collins Avenue produced across said Atlantic Avenue, and the eastern terminus, of said Atlantic Avenue as shown by said plat.

"(b) That portion of Ocean Front Walk extending from the south line of Atlantic Avenue and the south line of said Avenue produced in an easterly direction as a northern boundary, to the north line of Ocean Avenue as a southern boundary, all as shown by the plat aforesaid.

"Section 2. This ordinance shall take effect immediately upon its passage, after posting at the door of the Town Hall of said Town for a period of four (4) weeks.

"Section 3. All ordinances or parts of ordinances in conflict herewith are hereby repealed.

"Placed upon its final reading and passed this 20th day of March, A. D. 1917.

"(Signed) Thomas J. Pancoast,<br>"President of Council."

"Attest:

"(Signed) J. F. Canova, Town Clerk.

"Approved this 21st day of March, A. D. 1917.

"(Signed) J. N. Lummus, Mayor."

The area described in paragraph (a) of Section 1 is the other parcel of land involved in this suit.

A suit was filed by the City of Miami Beach against Roney Investment Company on September 7, 1935, to enjoin obstruction on lands described in paragraph (a) of

Ordinance No. 99, supra, and on the same day the City
of Miami Beach filed suit against Roney Investment Com-
pany and Twenty-Third Street Realty Company to enjoin
obstruction of the property described in paragraph (a) of
Section 1 of Ordinance No. 96, supra.

Afterwards the two suits were consolidated.

This is the second appearance of these cases here. See
127 Fla. 773, 174 So. 26. After the mandate went down
answers were filed and testimony was taken on which de-
cree was entered in favor of City of Miami Beach in the
suit against Roney Investment Company and Twenty-
Third Street Realty Company and in favor of Roney In-
vestment Company in the other suit. In each suit the losing
party appealed.

We find no error in the decree in the case of City of
Miami Beach v. Roney Investment Company.

Decrees should have been in favor of the defendants in
both cases.

The Master assumed and held as follows:

"The defendants by their answers set up three defenses
to the bill: (1) that the original dedication of said street,
as shown on the plats filed in evidence as Plaintiff's Ex-
hibits A-1 and A-2, was never accepted by the Town of
Miami Beach or by its successor, the City of Miami Beach;
(2) that the alleged street was legally vacated by a valid
ordinance of the Town of Miami Beach; (3) that the City
of Miami Beach, by its conduct in reference to the use of
said street by the defendants, is equitably estopped to main-
tain this bill.

"As to the first contention, it is undisputed in the evi-
dence that the original dedicator of the plat in question, on
or before the 20th day of March, 1917, applied to the
Board of Aldermen of the Town of Miami Beach to vacate
said street and that the Board of Aldermen did pass Or-

dinance No. 96, providing that said street be vacated, discontinued and abolished. It is the opinion of your Special Master, and he so finds, that such application and subsequent action by the Board of Aldermen of the Town of Miami Beach in adopting said ordinance, is conclusive evidence that such dedication had theretofore been accepted by the municipality."

We cannot agree to such conclusion. The conduct referred to in the above quotation may have evidenced the existence of an opinion that the dedication had been accepted, but it could not be construed as evidence of a previous acceptance, nor could it be construed to be an acceptance because as such it came too late. The dedication must be accepted before it is withdrawn and certainly the application of the landowner, who tendered the dedication to the municipal authorities to "vacate, discontinue and abolish" the dedication insofar as it applied to the described property was a withdrawal of the offer of dedication.

The requisites for effective dedication are stated by this Court in Kirkland v. City of Tampa, 75 Fla. 271, 78 Sou. 17. See also City of Miami v. F. E. C. Ry., 79 Fla. 539, 84 So. 726; City of Palmetto v. Katsch, et al., 86 Fla. 506, 98 So. 352; Burns v. McDaniel, 140 So. 314, 104 Fla. 526; City of Pensacola v. Kersey, 155 So. 730, 115 Fla. 496.

In City of Miami v. F. E. C. Ry., 79 Fla. 539, 84 So. 726, it was held:

"To constitute a dedication at common law there must be an intention on the part of the proprietor of the land to dedicate the same to public use; there must be an acceptance by the public; and the proof of these facts must be clear, satisfactory and unequivocal.

"The burden of proving acceptance of an offer to the

public to dedicate lands for streets, alleys and parks is upon the county or municipality asserting it.

"A common law plat has no effect as a conveyance, and an offer to dedicate thereby created may be revoked by the owner or his grantee at any time before acceptance by the public.

"Where a common law offer of dedication has been made and has not been accepted by or for the public, a conveyance before acceptance of the property so offered may constitute a revocation as to the public of the offer to dedicate.

"Where a plat is recorded showing the dedication of land in a city bordering on a bay for a park, the dedicators reserving all riparian rights adjacent to the land, and before the acceptance of the dedication by the public, the dedicators convey the land with riparian rights to a railroad company, which company constructs some of its operating facilities on portions of the land and actually occupies and uses for railroad purposes such portions for years before acceptance of any nature of the dedicated land for park purposes by or for the public, the municipality cannot recover from the company the portions of land so occupied and used by the company or the lands covered by the reserved riparian rights below high water mark at the time of the filing of the dedication plat."

It is undisputed that there was no conventional acceptance of the dedication of the lands involved here. The complainant City relied on *acceptance* by user.

It is clear that at all times after the passage of Ordinances 96 and 99, *supra*, the then owners and their successors in title of the fee with full knowledge and acquiescence of the City have been in possession and control of the property and that from and since 1925 have made and maintained substantial improvements thereon. It is also clear that while the owners have constructed and main-

tained driveways and walkways on the property the use thereof by the public has been a permissive use only.

So it follows that to rely on acceptance by user, the City is limited to proof of such acceptance between the date in 1916 when the dedicating plat was filed and the dates in 1917 when the proffer of dedication was withdrawn by the applications for cancellation of the dedication.

So we come to the question: What is required to constitute acceptance by user of the proffer of dedication?

In Kirkland v. City of Tampa, *supra,* it was held:

"The burden of proving acceptance of an offer to the public to dedicate lands for streets, alleys and parks is upon the county or municipality asserting it."

In Couture, *et al.,* v. County of Dade, 93 Fla. 342, 112 So. 75, it was held:

"There are certain methods by which the public acquires the right to pass and repass over a way thus establishing a highway; viz,: by prescription or long user; by statutory proceedings in the exercise of the right of eminent domain, and by dedication to the public by the owner of the soil with the sanction of the public authorities.

"The establishment of a public highway by prescription or long user is based on the presumption of a prior grant either of an antecedent exercise of the power of eminent domain by proper authorities or a prior dedication of the land to public use. In any case it is the adverse use and possession which established the highway."

And, in the body of the opinion by Mr. Chief Justice ELLIS, it was said:

"The term 'possession of the highway' by the County or the people thereof is a misleading phrase because it may signify that as the public uses a road it may be said to be in the possession of it. But mere user of a roadway does not alone establish its character as a public highway. Hav-

ing once become a public highway by the means by which they are established, its status is fixed and remains whether used much or little by the public until it is actually aban-doned, but until it does become a public highway the public has no easement over the land traversed by it unless it has been given or consented to by the owners of the soil."

In the City of Miami v. F. E. C. Ry. Co., *supra,* it was said:

"A revocation of a proffered dedication of a park does not destroy the private rights of owners of lots' who had already bought with reference to a plat showing the dedicated park; though such private rights would be subject to a proper application of the rules of repose and estoppel as well as of the police power. Even if prior to 1898 persons crossed the strip at different points in going to and' from the waters of Biscayne Bay and fished and bathed in the waters adjacent to the strip and otherwise utilized the strip in a casual or desultory way, that does not under the circumstances shown, constitute a user of the strip for public park purposes so as to operate as an acceptance by the public of the proffered dedication' for a public park before the title to the strip was conveyed by the dedicator to the defendant, who with the rights of the dedicator and with the consent of the city authorities actually occupied portions of the strip for purposes that were and are inconsistent with the use of such portions of the strip for public park purposes. This actual occupancy by the grantee of the dedicator before acceptance 'of the proffered dedication, under the special circumstances shown in this case, operated as a revocation of the proffered dedication as to the portions of the strip so occupied. If the City Council had no authority to vacate portions of the strip or to grant rights of way over it after its acceptance by or for the public, this did not preclude the City Council from declining

to accept the proposed dedication or before acceptance from acquiescing in the occupancy of portions in the strip by the grantee of the dedicator for purposes inconsistent with the dedication, which occupancy before any acceptance by or for the public revoked the proffered dedication *pro tanto*. The defendant is not a stranger to the dedicator's title and rights, and a trespasser upon the rights of the public; but the defendant had all the rights of the dedicator and had actually occupied portions of the strip with the acquiescence of the City Council and apparently of the public long before there was any recognition of or acceptance of the proffered dedication for public park purposes by or for the city in any way whatsoever.

"While the city and the public were entitled to a reasonable time within which to accept the proffered dedication of the strip for public park purposes, the length of time that would be reasonable depended on circumstances. As portions of the strip were sought to be actually occupied by the grantee of the title thereto from the dedicator, and as such occupancy and use for other purposes by one having the title thereto from the dedicator, if taken before acceptance of the dedication by or for the public, would operate in law as a revocation of the proffered dedication as to the public rights therein, a failure of the public and the city to accept or to use the proffered strip for the public park purposes, before its occupation and permanent use by the defendant for other purposes, served to curtail the time within which acceptance should reasonably have been made; and this lessening of time was a result of the inaction of the public and of the city authorities in failing to accept the proffered dedication and of the action of the City Council in acquiescing in the desired occupancy by the defendant when they could have accepted the proffered dedication and perfected rights of the public in the use of the

entire strip between 3rd and 7th streets for public park purposes under the dedicated plat."

Having reached the conclusion that the City failed to show acceptance of the dedication sufficient to meet the rule hereinbefore stated, it becomes unnecessary for us to discuss the question that is presented in the briefs, as to whether or not Ordinances 96 and 99, *supra,* were invalid because of having been passed in the interest of the owners of the fee and not in the interest of the public.

We will say, however, that we do not think the evidence is legally sufficient to show the infirmity alleged in this regard.

There is no conflict in the evidence as to what prompted the City Council in the enactment of the ordinances. Therefore, we are not required to observe the rule that the Chancellor's findings of fact on conflicting testimony will not be disturbed on appeal. The question here to be determined is the legal sufficiency of the non-conflicting testimony.

There have probably been few streets or thoroughfares either opened or closed where the opening or closing of the same did not benefit the owner of the fee involved. So in the instant case, if the streets involved had ever been opened or accepted as public thoroughfares, the closing of them is clearly shown to have been beneficial to the owners of the fee. But, it is also shown that at the time of the passage of the ordinance the involved property, and in fact the whole subdivision in which that property was located, was entirely unimproved and unsettled; that there were no buildings erected thereon and no people living there. The inhabitants of Miami Beach at that time were few and were a long distance from the location of this property. It was the dream and the desire of all owners of the property in Miami Beach to build a great tourist resort there and, to attain that goal, it was necessary to make the ocean front

property attractive to people having money and some faith in the future development of the locality, so that they would be willing to purchase that property and expend large sums of money in the erection of expensive hotels and other facilities for entertaining the tourist clientele. For this we do not draw on our personal knowledge and information but it is all in the record here.

It is a matter of common knowledge that the dream has come true and the vision has been realized. Millions of dollars have been invested and this subdivision which was covered with scrub and sand in 1917 has become one of the best known playgrounds of the rich in the world. The first great tourist hotel erected in Miami Beach was erected and stands on the block, the title to which carried with it the fee of the lands involved in these suits. The hotel alone cost over Two Million Dollars. The corporation which bought the land and built that hotel some ten years before these suits were instituted went into possession of these lands when the hotel was built and has continued to use them as its private property with the acquiescence and consent of the municipality.

The public, constituting the citizenship of Miami Beach has reaped the benefit which was anticipated and hoped for and intended to be accomplished by the members of the City Council when the involved ordinances were enacted.

If there had been a completed dedication by proffer and acceptance, and if the enactment of the ordinances, *supra,* was without authority of law, the conduct of the Municipality from the date of enactment of these ordinances up until the institution of these suits and the conduct of the owners of the fee, as shown by the record, is amply sufficient to work an estoppel against the Municipality, at this late date and after all that has transpired attempting to regain control of the involved property.

We shall not prolong this opinion by citation of authorities to support this last statement because its support is not necessary to the disposition of the cases.

For the reasons hereinbefore stated, the decree, insofar as it dismissed the bill of complaint in case No. 42556-A of City of Miami Beach v. Roney Investment Company, is affirmed, while the decree in the case of suit No. 42557-B is reversed, with directions that a decree be entered dismissing the cause.

The costs shall be taxed against the appellee City of Miami Beach.

So ordered.

Affirmed in part and reversed in part.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the rules of this Court.