CITY OF MIAMI BEACH, et al., v. THE MIAMI BEACH IMPROVEMENT COMPANY, et al.

14 So. (2nd) 172                                    January Term, 1943
June 4, 1943                                              En Banc
Rehearing Denied July 3, 194ʒ

*Loftin, Calkins, Anderson & Scott,* for appellants.

*Evans, Mershon & Sawyer, W. O. Mehrtens, M. L. Mershon* and *William W. Muir,* for appellees.

PER CURIAM:

The Miami Beach Improvement Company, a Florida corporation, came into existence during the year 1912, and accepted title to a tract of land, containing ocean front property, situated in Dade County, Florida, on which a considerable portion of the City of Miami Beach, Florida was later constructed. The lands were wild and unimproved, and were later surveyed and subdivided into lots, blocks, streets and drives, and on October 1, 1912, a map or plat of this subdivision was recorded in Dade County, Florida. An inscription appearing on the recorded plat or map is viz:

"Map

of the

Ocean Front Property

of

THE MIAMI BEACH IMPROVEMENT CO.

Riparian rights with

Boulevard, walks and beach

Reserved for Public."

On December 2, 1912, a resolution of the directors of the corporation authorized the filing of a second plat or map of the property and appearing therein is language viz:

"That said company does hereby dedicate to the perpetual use of the public the streets, avenues, drives, and alleys and all riparian rights and submerged land adjacent to and abutting upon any of said streets, avenues, drives or alleys wherever the said streets, avenues, drives or alley adjoin the Atlantic Ocean, said Indian Creek or said Lake, as shown by said map;

"That said company does hereby also dedicate to the perpetual use of the public the right to erect and maintain an elevated board walk parallel with said low water line of said Ocean, extending across said real estate hereinabove described, from South to North, from a point where the North line of Ocean Avenue, as shown by said map, if extended, would intersect said low water line of said Atlantic Ocean to the South Line of Lot numbered one (1) of Block numbered eleven (11), as shown by said map."

On January 13, 1913, the Miami Beach Improvement Company conveyed to the City of Miami "three blocks," inclusive of the "Ocean Front Strip," as a public park and recreation ground. On May 3, 1920, the City of Miami re-conveyed the property to the plaintiff below (Miami Beach Improvement Company), the town of Miami Beach having been organized in the interim (March 26, 1915). On August 9, 1920, plaintiff conveyed the identical property to the City of Miami Beach, and the conveyance contained a "reverter clause" as previously appeared in the conveyance to the City of Miami.

On February 10, 1916, a third map or plat was filed and the drive from 23rd Street to 29th Street was straightened and named "Miami Beach Drive." Pertinent provisions therein are viz:

"That the said Company does hereby dedicate to the Perpetual use of the public, the streets, avenues, drives and alleys, and all riparian rights and submerged lands abutting upon any of said streets, avenues, drives or alleys, wherever the said streets, avenues, drives, or alleys, adjoin the Atlantic

Ocean, Indian Creek, or Lake as shown on the attached map. That the said Company does hereby also dedicate to the perpetual use of the public the right to construct and maintain a public walk, running parallel with the Ocean Front, from the South line of Black B to the South line of Lot 1 of Block 11, as shown on the attached map."

Located on these maps or plats is a parcel of land approximately 3900 feet in length, north and south, along the ocean front, with a depth of 75 to 150 feet from the eastern boundary of Miami Beach Drive to high water mark of the ocean. The width or depth of the strip varies and is affected by high water tides, storms, etc. The ocean front strip as platted was not designated by lots or blocks but conveyances were made, from time to time, of various parts of the Ocean Front Strip and the deeds described such lands so conveyed by meet and bounds rather than by descriptions appearing on the maps or plats.

On November 3, 1920, the City of Miami Beach, by resolution, adopted the third map or plat. It likewise accepted the dedication offer of the Miami Beach Improvement Company of a fifty foot wide, public way, appearing or identified on the map or plat as Miami Beach Drive, along with the location of a board walk to be constructed on the ocean front. Improvements thereon were made by paving, constructing a wall, and planting trees and shrubbery. The Miami Beach Improvement Company conveyed or sold lots according to these maps or plats. The conveyances contained the language, "together with all riparian rights and submerged lands adjacent or appurtenant thereto."

Litigation over the years has arisen out of these real estate developments. See 23rd Street Realty Corp. v. City of Miami Beach, 140 Fla. 257, 191 So. 464; The Tomkins Corp. v. City of Miami Beach, 135 Fla. 360, 185 So. 422, as well as other suits. The factual background of this suit would support other recitals but our efforts here have been restricted to the pertinent facts absolutely necessary to develop the issues in controversy between these litigants. We find the record voluminous but well prepared; the briefs are exhaustive and reflect many days of study and research; and we have

been favored with able oral argument at the bar of this Court by industrious counsel representing the respective parties.

On December 8, 1938, the Circuit Court of Dade County, Florida, entered an order restraining the City of Miami Beach, and its city officials, from asserting a claim of any easement or other right, title or interest antagonistic to the Miami Beach Improvement Company, owner in fee simple of that part of the "Ocean Front Strip" described viz:

"That tract or strip of land bounded on the West by Miami Beach Drive and on the East by the Atlantic Ocean, and lying between the North and South boundary lines of Block 5 extended Eastward to the Atlantic Ocean, with all riparian rights appurtenant thereto, according to the Amended Plat of the Ocean Front Property of The Miami Beach Improvement Company recorded in Plat Book 5, pages 7 and 8, of the Public Records of Dade County, Florida."

In a joint and several answer the defendants alleged that the plaintiff had perpetually dedicated the Ocean Front Strip to the public and acceptance thereof made in behalf of the public; that the public had acquired a prescriptive right in the Ocean Front Strip and by counter claim sought a decree perpetually restraining the plaintiff from asserting an alleged exclusive ownership and the exclusive right to use the Ocean Front Strip, *supra*. The restraining order was entered by the late Honorable H. F. Atkinson, circuit judge, and considerable testimony as adduced by the parties was heard by him, but his death occurred prior to the completion of the taking of the evidence and the entry of a final decree, and the case was completed by the Honorable Ross Williams, circuit judge. The final decree so entered made findings of fact and made permanent the restraining order so entered, and on appeal therefrom has been perfected here.

The title or ownership of the property is not involved. The title or ownership of the property is admitted to be in the Miami Beach Improvement Company, subject to its outstanding agreement to sell. The answer and counterclaim of the City of Miami, broadly speaking, presented two issues viz: (a) Was there a dedication of the Ocean Front Strip to the public by any one of the three maps or plats, that is, was

it the intention of the plaintiff in drafting and recording the plats to dedicate to the public use the Ocean Front Strip, of which a part is here involved, and if so, was such offer of dedication accepted by the public?   (b) Has the public acquired a prescriptive right in the Ocean Front Strip, that is, has the public for twenty years prior to the filling of the bill continuously, openly, notoriously and adversely, under claim of right and not in recognition of, or subservient to, any claim of private ownership, used the said Ocean Front Strip? These are affirmative defenses and the burden of establishing each, under our system, was on the defendant below.   See Baylarian v. Tunnicliffe, 105 Fla. 484, 141 So. 609; City of Tarpon Springs v. Smith, 81 Fla. 479, 88 So. 613; Lonergan v. Peebles, 77 Fla. 188, 81 So. 514.

The courts of Florida have defined a common law dedication as a setting apart of land for public use, and to constitute such a dedication there must be an intention by the owner clearly indicated by his words or act to dedicate the land to the public use.   Where an express or implied dedication is relied on, the intention of the owner to set apart the lands for the use of the public is the foundation and essence of every dedication.   See Florida East Coast Ry. Co. v. City of Miami, 79 Fla. 539, 84 So. 726.   The act of dedication is affirmative in character, need not be by formal act or dedication, may be by parol, may result from the conduct of the owner of the lands dedicated, and may be manifested by written grant, affirmative acts or the permissive conduct of the dedicator.   The mere fact of user by the public for an extended period without the consent or objection of the owner does not show an intent to dedicate.   See City of Palmetto v. Katsch, 86 Fla. 406, 98 So. 352.

It is necessary to show, so as to constitute dedication at common law, that there is an intent on the part of the proprietor of the land to dedicate the same to public use; there must be an acceptance by the public, and the proof of these facts must be clear, unsatisfactory and unequivocal.   As to the time when the public must accept a tender of dedication, the authorities seem to be in harmony—holding that acceptance may be within a reasonable time, but before the with-.

drawal of the offer, as the convenience of the public, or those who live upon adjacent lots, requires. See Kirkland v. City of Tampa, 75 Fla. 271, 78 So. 17.

The burden of proof in support of an averment of dedication in an answer constitutes new matter and becomes an affirmative defense, and the burden rests upon the city to prove such dedication. See McGourin v. Town of DeFuniak Springs, 51 Fla. 502, 41 So. 541; City of Pensacola v. Kersey; 115 Fla. 480, 155 So. 730. Many of the principles of law *supra* have been recognized with approval in the recent case of Twenty-Third Street Realty Corp. v. City of Miami Beach, 140 Fla. 257, 191 So. 464.

Counsel of record, generally speaking, are in accord on the principles of law applicable to the controversy. A contrarity of views, however, arises in the attempted application of the law to the facts appearing in the record. An intention to dedicate the land *supra* on the part of the owner, The Miami Beach Improvement Company, as emphasized by counsel for appellant, is manifested by: (1) The language employed and appearing on maps or plats numbered two and three *supra;* (2) the language of the auctioneer (agent of appellee); (3) lots and blocks sold and conveyed by the plats and maps; (4) the language appearing in the deeds selected and prepared by the appellee; (5) provisions for a board walk paralleling the ocean appearing in the maps or plats; (6) the dedication to the public of a drive on the side of the Ocean Front Strip; (7) language in deeds to certain lots viz: "Reserving unto the public a right-of-way on the easterly side of said lots of 12 feet across;" (8) statements made by the president of the appellee corporation; (9) the use over a period of years of the Ocean Front Strip by the public for recreation purposes; (10) the construction by the city of a bulkhead and groyns along the Strip next to the ocean; (11) the acquiescence by the owner of the public use of the property; (12) the testimony given by witnesses Pancoast, Cook, Palmer, Speyer, Frazure, Hallem, Tomlinson, Lummus, Merrick and Perry, and advertisements appearing in the newspapers; (13) failure of the appellee to return the property for taxation or to pay taxes thereon over the years;

(14) failure of the chancellor to admit into evidence the file and proceedings in the case of The Thomkin Corporation v. City of Miami Beach, decided by Judge Barns and reported in 135 Fla. 360, 185 So. 422; (15) likewise the decree of the United States District Court in the case of Kane v. City of Miami Beach: (16) the several exhibits filed in evidence before the chancellor; (17) other items of evidence and deductions from all the testimony adduced.

Counsel for appellee point out that the evidence adduced by the appellant in the lower court failed to meet the legal requirements establishing prescriptive rights in the appellant; that the use of the property by the public for bathing and recreational purposes at all times was consistent with plaintiff's rights and ownership; that the use by the public before and after the filing of the plats was the same; that no one resided continuously on or asserted possession of the property; that the owner did not object to the ocean bathing privileges on the part of the public. The testimony of witnesses Speyer, Weise, Pinder, Frazure, Filer, Gautier, Mrs. Hallam, Ross, Tomlinson, Perry, Merrick and Lummus is cited to sustain this contention. Likewise, as property located east of the drive developed, the owners exercised control over the Ocean Front Strip east of their lots, and, it is contended, this is a conclusive showing that the public did not acquire prescriptive rights in the Ocean Front Strip.

It was the view of the chancellor that the second plat supplanted the first and that the land involved is a part of the original tract conveyed to the Miami Beach Improvement Company. The answer of plaintiff below to the claim of the defendants that the inscriptions on the dedication plats made by the owner of the property constituted a complete dedication of the involved property is that the dedication resolution was only a complete dedication to the public of the streets, avenues, drives and alleys, and all riparian rights and submerged lands abutting upon the streets, avenues, drives and alleys adjoining the Atlantic Ocean, etc. The resolution of dedication did not include the land described in this suit. While the third plat made some changes in the second plat, it did not affect the described land except as to dedicate to

the use of the public the beach abutting on the ends of the streets north of Miami Drive where said streets adjoining the Ocean; that no part of the Ocean Front Strip, except the street ends, was dedicated to the use of the public by the third plat and dedication resolution.

The words "beach reserved for the public" emphasized by counsel made a part of the dedicatory statement of the Miami Beach Improvement Company were considered by the chancellor in language viz:

"The word 'beach' in the sentence 'Riparian Rights with Boulevard, walks and beach Reserved for Public,' which is part of the title of the 'first' or tentative, revoked paper map, and also part of the title of the 'second plat,' did not refer to or contemplate the Ocean Front Strip, and the plaintiff did not, by the use of such words by the draftsman who prepared the title to those maps, have any intention at all to offer to dedicate to the public use, and did not offer to dedicate to the public use, any part of the Ocean Front Strip. Those words appearing in the title were merely generally descriptive of the maps and the subdivision and of the rights which the plaintiff proposed to create by the instrument expressly prescribing, restricting and limiting the dedication thereafter executed by plaintiff and attached to the 'second' plat. . . ."

As to the contention that the selected language employed by the plaintiff, together with all riparian rights and submerged lands adjacent or appurtenant thereto," appearing in deeds constitutes a dedication, the chancellor said:

". . . These deeds were printed form deeds used by the plaintiff which did not purport to create riparian rights where none existed, and the above quoted language was not intended to be applicable or to convey any riparian rights unless the property described in the deed was waterfront property. Even if the grantees under such form deed could assert or claim any riparian rights thereunder where no such rights were appurtenant to the lands conveyed in such deeds, which is doubtful to say the least, the use of such form deeds by the plaintiff did not convey or evidence the existence of any right to the public generally to use the Ocean Front Strip or any part thereof, and the plaintiff, by using such form deeds, did

not intend to, and did not, offer to dedicate or dedicate to the public any right to use the Ocean Front Strip or any part thereof."

The interpretation of the language by the chancellor in the resolutions of dedication and on the maps placed on record by the Miami Beach Improvement Company, coupled with the quoted language appearing in the deeds of conveyance, appears to be in accord with the interpretation thereof made by the officers of the Miami Beach Improvement Company and in these conclusions we fail to find reversible error.

The use of the property by the public was consistent with appellee's ownership and the claims of appellant were considered and disposed of by the chancellor in language viz:

"The conduct of the City from the date of the filing the three plats by plaintiff up until shortly before the institution of this suit, such as accepting and holding under a deed from plaintiff a part of the original Ocean Front Strip, the requesting and obtaining by the City from plaintiff of an easement to allow construction and maintenance of bulkheads and groynes, recognizing plaintiff's exclusive rights and control over said strip, the recognition by the City of the 'third' or amended plat, the building by the City of the separating wall over the east boundary of Miami Beach Drive and the west boundary of the Ocean Front Strip, the complete failure of both the City and the public to assume any responsibility for, and assert any claim or right in or to, the Ocean Front Strip for over twenty years from 1915 until 1936, and the conduct and exclusive control of the plaintiff and its grantees, over the Ocean Front Strip, as shown by the record, are entirely inconsistent with the City's present position and constitute a recognition by the City and the public of plaintiff's rights at the very time the City now claims it and the public acquired rights in the Ocean Front Strip by dedication or by prescription. These circumstances and the City's laches are amply sufficient to, and they do, work an estoppel against the City, at this late date and after all that has transpired, from attempting to gain control of the Ocean Front Strip for public use, without just compensation, in the manner fully disclosed by the record in this case."

The public used the Ocean Front Strip for bathing and recreation purposes in increasing numbers from the time of the alleged dedication until 1936 or 1938, when the claims of the plaintiff below were made known to the appellant, and the City of Miami Beach acted immediately upon the first visible encroachment brought to its attention. The answer to this contention is that the City of Miami Beach in 1927 constructed a bulkhead and groynes on the beach adjoining the property when the Miami Beach Improvement Company, on August 27, 1927, by a written instrument conveyed to the City of Miami Beach an easement for the construction thereof. The chancellor concluded that the City of Miami Beach at this time had knowledge of the ownership of the property and the public use of the beach was consistent with and not antagonistic to the ownership of the property.

The case of Kane v. City of Miami Beach, *supra*, decided by the United States District Court for the Southern District of Florida on December 18, 1940, involved Lots 1 and 2 of Block 6 and a strip of Ocean Front property directly east of the aforesaid lots. The land involved in the case of Thomkin Corporation v. City of Miami Beach, 135 Fla. 360, 185 So. 422, was Lots 4 and 5 of Block 8, and the Ocean Front Strip lying directly east thereof between the Miami Beach Drive and the Atlantic Ocean. It was contended that the identical question presented and decided in the cases *supra* is involved in the case at bar. The files in the two cases were offered in evidence before the chancellor but objected to because: (1) the purported records do not support any issues raised by the pleadings in the case at bar; (2) no issue of *res adjudicata* is raised by the pleadings in the case at bar; (3) it affirmatively appears that the Miami Beach Improvement Company was not a party to either of the suits or barred by the decrees; (4) admissions made by the pleaders or parties in the two suits would not be binding upon the Miami Beach Improvement Company; (5) the records are without probative force and effect upon the issues made in the case at bar; (6) the findings of fact and law in the suits do not appear to have been predicated upon the evidence or the matters in evidence in the case at bar; (7) the records

of the two cases were inadmissible in the case at bar for any purpose whatsoever. The chancellor sustained the aforesaid objections and appellant asserts that this ruling constitutes reversible error.

The sufficiency of the allegation appearing in a bill of complaint to the effect that there has been a former competent adjudication of the same subject matter as between the parties can or may be raised by demurrer (now motion to dismiss). See Quigley v. Cremin, 94 Fla. 104, 113 So. 892; Keen v. Brown, 46 Fla. 487, 35 So. 401. A plea of *res adjudicata* that fails to aver a final judgment or other final disposition between the same parties for the same cause of action is bad. See Walton Land & Timber Co. .v. Louisville & N. R. Co., 69 Fla. 472, 68 So. 445. A plea averring an adjudication between *other parties* is not a good plea in bar. We therefore conclude that the issues as made by the pleadings of the parties do not justify the introduction into evidence of the record of the two suits *supra*. See Bell v. Niles, 61 Fla. 114, 55 So. 392.

It is contended that the two decrees determined the status of the "Ocean Front Strip" and became judgments *in rem* and binding on the whole world, inclusive of the plaintiff to this cause, although neither the Miami Beach Improvement Company was a party thereto nor the land described in this suit was the subject matter of the two suits. 31 Am. Jur. 96, par. 439, is cited and relied upon to sustain this conclusion. It has not been made to appear that the Miami Beach Improvement Company was a party or in privity with the parties in either of the aforesaid suits or that the issues therein were identical with the issues in the suit at bar. If there is any uncertainty as to the matter formerly adjudicated, the burden of showing it with sufficient certainty by the record or extrinsically is on the party claiming the benefit of the former adjudication. See Prall v. Prall, 58 Fla. 496, 50 So. 867, 26 L.R.A. (NS) 577. In order to make a matter *res adjudicata* there must be a concurrence of (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4)

identity of the quality in the persons for or against whom the claim is made. See Gray v. Gray, 91 Fla. 103, 107 So. 261.

Painstaking consideration has been given to the several questions and issues presented by this record. The testimony appearing therein has been carefully weighed, analyzed and considered. We are confronted with specific findings by the chancellor on the many disputes and conflicts in the testimony. The findings so made are on all controverted issues. Error on these several findings has not been made to appear. We do not feel justified on this appeal to disturb the findings because sufficient substantial testimony appears in the record to support the conclusions reached. See Kent v. Knowles, 101 Fla. 1375, 133 So. 315; Farrington v. Harrison, 95 Fla. 769, 116 So. 497.

The decree appealed from is hereby affirmed.

BUFORD, C. J., TERRELL, CHAPMAN, ADAMS and SEBRING, JJ., concur.

THOMAS, J., dissents.