H. L. FANCHER and F. T. FANCHER v. LEE M. RUMSEY, JOHN DUTTENHOFER, *et al.*

164 So. 688.
Division B.
Opinion Filed January 29, 1935.
Rehearing Granted July 12, 1935.
On Rehearing December 10, 1935.
Rehearing Denied January 2, 1936.

*Fancher, Paty & Warwick* and *Giles J. Patterson,* for Plaintiffs in Error;

*Copeland & Therrell, Shutts & Bowen, Frank B. Shutts, Crate D. Bowen, L. S. Julian, H. N. Bourneau, H. Pierre Branning, James M. Carson, Cecil C. Curry, A. M. Reder* and *M. S. Salomon,* for Defendants in Error.

PER CURIAM.—This case is before us on writ of error to a judgment in favor of defendants on demurrer sustained to amended declaration.

The controlling question before us for determination is whether or not the declaration sets up a sufficient state of facts to show that the several defendants were joint adventurers in the purchase for resale of a certain lot of real estate and by reason of such relation were jointly liable for the purchase price, although the same was evidenced by promissory notes executed by only one of such joint adventurers.

The facts are not before us and, therefore, we are not called upon to determine whether or not the status of joint adventurers has been established, but only whether or not such status has been sufficiently alleged.

The declaration is of considerable length. The allegations of the declaration are sufficient to show that the defendants were on the 10th day of October, 1925, and thereafter, associated together in the purchase of a certain lot of lands in Martin County, Florida, known as La Serena Beach; that one Walsh entered into a contract with the owners to purchase the land and Walsh and one Cherbino furnished the binder money in the sum of $50,000.00. That the agreed price was $1,250,000.00, one-fourth of which was to be paid at closing the purchase, the $50,000.00 binder money to be a part of the first one-fourth cash payment; that Jerome Cherbino controlled the corporation under the name of Jerome Cherbino Enterprises, Inc. Jerome Cherbino communicated with the other defendants and they agreed to invest with Jerome Cherbino Enterprises, Inc., for the purchase of the particular lands the certain sums of money set opposite their respective names as follows:

| | |
|---|---|
| Theo Bodewein | $13,500 |
| John Duttenholfer | 40,000 |
| Geo. M. Hillenbrand | 10,000 |
| Leo M. Rumsey | 90,000 |
| Ella Rumsey Cartier | 50,000 |

George Sellers ............................................... 25,000
C. R. Dashiell ............................................... 25,000
Wm. M. Barnhorst ....................................... 5,000
Geo. H. Feltes ............................................... 10,000
B. S. Marsh, Jr. ........................................... 25,000
Dr. F. B. Moorehead ................................... 35,000
Isabelle Logsdon .......................................... 5,000

This money was paid over to Jerome Cherbino Enterprises, Inc., and by it to Walsh and by Walsh paid to the land owners as part payment of the purchase price. That certain agreements were executed under seal by the various investors and by Jerome Cherbino Enterprises, Inc., Jerome Cherbino Enterprises, Inc., being designated as party of the first part and the syndicate member being designated as party of the second part, in which it was agreed:

"That the party of the second part (Syndicate member) invests with the party of the first part (Jerome Cherbino Enterprises, Inc.), the sum of the given amount of money, showing the number of dollars, which sum represents an interest in the amount so stated in the agreement, in the purchase of the said St. Lucie Syndicate property, the property being fully described therein; that when said lands had been resold (such resale to be at such time as Jerome Cherbino Enterprises, Inc., deemed advisable) to refund to each of said investors in said property the amount of the original investment and in addition thereto, the sum or sums equal to a one hundred per cent. profit as regards the original investment in the following manner:

"A minimum of 50% of the original investment out of the first quarter purchase payment;

"A minimum of 50% of the original investment out of the second quarter purchase payment;

"A minimum of 50% of the original investment out of the third quarter purchase payment;

"A minimum of 50% of the original investment out of the fourth quarter purchase payment, or such larger amounts as may be warranted by the terms of the sale when and as the cash proceeds of such sale were turned over to Jerome Cherbino Enterprises, Inc., by the purchasers of said land.

"It was further stipulated in the said investors agreement that any parcel of land which shall be acquired by the party of the first part by accretion, natural or artificial, shall become a part of the 'St. Lucie' property as if owned at the time of making this agreement."

Two copies of the agreement, it is alleged, were sent to each of the investors with directions that they respectively sign the same and return one copy to Jerome Cherbino Enterprises, Inc. It is alleged that the defendants executing the agreement were so situated at the time that it was not practical for all to sign the same agreement, so there were a number of agreements prepared in identical form and identical copies sent to each of the parties to be signed, the only difference being the name of the party of the second part and the amount of money contributed to the enterprise.

The deed from the owners to Walsh was dated October 10, 1925, but other allegations of the declaration are sufficient to show that it was not delivered until subsequent to the agreements between the contributors of the purchase price and Jerome Cherbino Enterprises, Inc.

It is alleged:

"The title was so taken in the name of D. L. Walsh, by arrangement and agreement with the various syndicate members and as represented by Jerome Cherbino Enterprises, Inc., under its terms with them.

"It was the understanding by and between the said D. L. Walsh and Jerome Cherbino Enterprises, Inc., as the representative of said joint venturers, that after Walsh had taken title in his own name he was to convey the property to Jerome Cherbino Enterprises, Inc., and that it was to hold the property on behalf of the syndicate; however, after deed was taken Walsh refused to convey to Jerome Cherbino Enterprises, Inc., more than a one-half interest in the property and thereupon an agreement in writing and under seal was entered into by and between the said D. L. Walsh and Jerome Cherbino Enterprises, Inc., representing the various joint venturers, the substance of which was that the said Walsh recognized the investment and rights of the various syndicate members in the property, and agreed that upon a sale of the property payments should be made to Walsh and Jerome Cherbino Enterprises, Inc., jointly; that thereupon such payments should be turned over to Jerome Cherbino Enterprises, Inc., to be paid out by it to the syndicate investors according to the terms of the written syndicate agreement which was copied into it, also showing the amount of money invested in the property by such, and that any balance left after satisfying them was to be divided equally between Walsh and Jerome Cherbino Enterprises, Inc.; all of which arrangement was in accordance with the terms of the said written joint venture agreement under which defendants invested their money in the said property. A copy of said agreement between D. L. Walsh and Jerome Cherbino Enterprises, Inc., is hereto attached."

It is then alleged that pursuant to this agreement recognizing the rights of the syndicate members, Walsh and his wife conveyed to Jerome Cherbino Enterprises, Inc., a one-half interest in the property by warranty deed.

It is then alleged that the money so furnished by "Said

syndicate investors was turned over by each of them to, and invested with, Jerome Cherbino Enterprises, Inc., to be invested in the said land under the terms of said written agreement and was by Jerome Cherbino Enterprises, Inc., so invested; whereby, each of said syndicate members were interested in said property as investors therein as provided in said written joint venture agreement."

It is then alleged that Walsh, taking title to the property for and on behalf of joint venturers from the owners, executed certain purchase money notes, all of which were under seal, and also executed a mortgage for the deferred payments on the land, said mortgage being in proper form and under seal, to secure the payment of the various notes.

It is then averred that the owners of the property knew that Cherbino was interested in the purchase of the land but did not know of the interest of other joint venturers.

It is then averred:

"Plaintiffs further aver that all of said defendants are jointly liable for the deferred payments of the purchase price of said St. Lucie Syndicate property in and by virtue of said joint venture agreement and their investment in said property by and through the said Jerome Cherbino Enterprises, Inc., and the said D. L. Walsh.

"The entire negotiation, purchase and conveyance of said property, together with the execution of notes representing deferred payments and mortgage securing same, were conducted in Palm Beach County, Florida.

"One of the said notes so executed as aforesaid and representing a part of the unpaid purchase price for said land shows a promise to pay to the order of E. H. Bartholomew, on or before one year after date, $42,968.75 at Palm Beach Bank & Trust Company, West Palm Beach, Florida, with interest thereon at the rate of 8% per annum from date until

fully paid, interest payable semi-annually, and the makers and endorsers of said note further agreed to waive demand, notice of non-payment and protest and in case suit should be brought for the collection thereof, to pay reasonable attorneys' fees for making such collection, deferred interest payments to bear interest from maturity at 8% per annum, payable semi-annually. Said note was endorsed by payee, E. H. Bartholomew, and assigned and delivered to plaintiffs. A copy of said note is hereto attached."

We have carefully considered the briefs of the parties and the case has been thoroughly briefed by counsel for all interested parties.

It appears to us that the controlling principles of law applicable to this case are definitely settled in this jurisdiction by the opinion and judgment in the case of Drew v. Hobbs, *et al.*, 104 Fla. 427, 140 Sou. 211.

Under the allegations of the declaration, it is clear that the title to this land was taken in trust for Walsh, Cherbino and each of the other persons hereinbefore named who contributed money to the purchase price. There was no loan involved. Each of these so-called investors handed over to Jerome Cherbino Enterprises, Inc., as a mere conduit a certain amount of money to be invested in this particular land for the purpose of speculation by resale and by this transaction, if it was as alleged in the declaration, each became the owner of that proportion of the equitable title which his contribution bore to the entire purchase price.

It is not necessary for us to quote what was said in Drew v. Hobbs, *et al., supra;* nor to recite the authorities therein referred to. It is sufficient to say that on authority of the opinion and judgment in that case the judgment in this case should be reversed.

It is so ordered.

Reversed.

ELLIS, P. J., and TERRELL, and BUFORD, J. J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.

BROWN, J., dissents.

## ON PETITION FOR REHEARING.

By a PER CURIAM opinion filed in this cause on January 29, 1935, the judgment herein was reversed, but jurisdiction has been retained over the final disposition of this case through petitions for rehearing that were filed herein within the time allowed therefor and continued until disposed of by this Court.

It is contended by the petitioners for rehearing that there was a fundamental departure in the pleadings which this Court overlooked, and that such departure requires affirmance of the judgment under the rulings heretofore laid down by Falk v. Salario, 108 Fla. 135, 146 Sou. Rep. 193, and Livingston v. Malever, 103 Fla. 200, 137 Sou. Rep. 113, and that accordingly the judgment of the Court should have been affirmed instead of being reversed.

The alleged departure complained of was not *specifically* ruled on nor discussed in this Court's opinion filed in this case on January 28, 1935, although the point was necessarily negatived by implication in the Court's conclusion reached and expressed at that time.

Upon further consideration of the petitions for rehearing filed herein, a majority of the Court are of the opinion that a rehearing should be granted but expressly limited in scope to the single proposition: Should demurrers have been sustained to plaintiffs' last amended declaration on the theory that the plaintiffs' last amended declaration constituted a departure in the pleadings because it amounted to a

substantial change in plaintiffs' theory of their case from a suit on the instruments relied on to establish defendants' joint liability to a suit on the purchase money indebtedness as evidenced by such instruments? And that such rehearing should be granted with directions to the parties to so recast their briefs on file herein as to limit the arguments made therein to the single point hereinbefore adverted to, with leave to present oral argument thereon before this Court *en banc* if so desired and indicated by formal request therefor.

Rehearing granted with direction to recast briefs within thirty days as to petitioners in rehearing—thirty days thereafter for plaintiffs in error to reply.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BUFORD, and DAVIS, J. J., concur.

## ON REHEARING

CAMPBELL, Circuit Judge.—Upon petition filed by the defendants in error, this court granted a rehearing in the above stated case, limiting the rehearing to the single question, viz.: Should the demurrers have been sustained to the last amended declaration on the theory that plaintiff's last amended declaration constituted a departure in pleading because it amounted to a substantial change in plaintiff's theory of their case from a suit on the instrument relied on to establish defendant's joint liability to a suit on the purchase money indebtedness as evidenced by such instruments? This is the statement of the order of the court granting the rehearing, quoted in the brief filed by counsel for Lee M. Rumsey, one of the defendants in error. This limitation of the extent of the rehearing is also agreed to in brief of counsel for the plaintiffs in error. Therefore, the holding of the court in its opinion, that the allegations of

the several counts of plaintiff's amended declaration, stated facts showing liability of the defendants in error as joint adventurers is not before us on this rehearing.

From the transcript of the record it appears that at the institution of the suit, the plaintiffs in the court below, plainiffs in error in this court, filed their declaration setting forth their cause of action in fourteen counts. It would be a laborious task, and extend this opinion to too great length to undertake to set out the declaration in full, and we do not think it necessary that such should be done. In each of the first ten counts it is alleged "That the *defendants* on 10th day of October, A. D. 1925, in the County of Palm Beach and the State of Florida by *their* promissory note, executed under seal and for value received, and now overdue, promised to pay to the order of E. H. Bartholomew, etc." Each of the said notes specifying different sums as the amount agreed to be paid on the face thereof.

It is alleged in each count that the note therein described was signed by D. L. Walsh only, but was given in part payment of certain ocean front real estate situated in Martin County, Florida, known to the defendants as the "St. Lucie Syndicate Property" and was also known as La Serena Beach, and that the defendants agreed to and did invest in St. Lucie Syndicate Property, the money that we have already described in the opinion filed herein. Each of these counts alleged that D. L. Walsh and Jerome Cherbino also invested money additional to these amounts, in said purchase. Each count further alleges that the cash payments for the real estate described were made with the money described and in the amounts alleged to have been contributed by the various defendants as members of the syndicate. That the title to said property was taken by deeds from the owners, and conveyed to D. L. Walsh, and he ex-

ecuted various purchase money notes for deferred payments, including the note described in each count, all being done in behalf of the said syndicate and as a part of the payment for said St. Lucie Syndicate Property, purchased by the said syndicate.

Each of the said counts then alleged that prior to the taking of title to the property, D. L. Walsh had agreed with the owners of same to purchase it, but that in reality he and Jerome Cherbino were jointly interested, each contributing one-half of the binder money paid, but that before deeds were taken it was agreed between said Walsh and Cherbino, that a syndicate would be formed by Cherbino, which was done, contracting with the syndicate members in the name of the corporation controlled by him, viz.: Jerome Cherbino Enterprises. That the syndicate was formed, composed of the investors named as defendants, and Walsh was given authority by the syndicate so organized and as its representative to take title to its property in his name; the purchase money was paid for and in behalf of the syndicate members with the money contributed as above stated, and with additional money furnished by said Walsh and Cherbino; that by arrangement later, a one-half interest in the property was conveyed by Walsh to said Jerome Cherbino Enterprises, Inc., each recognizing by special agreement the rights of the several syndicate members, and each to share equally in the property subject to the investment rights of the syndicate members furnishing the cash payment, as above stated. Each of the ten counts further alleges, that it was agreed by and between the respective members of the syndicate and the said Jerome Cherbino Enterprises, Inc., that the sum of money so invested by each of the said syndicate members, represented an interest in the amount so paid by each, in the said St.

Lucie Syndicate Property, and that when said lands had been resold (such resale to be at such time as Jerome Cherbino Enterprises Inc., deemed advisable) to refund each of said investors in said property the amount of their original investment and in addition thereto the sum or sums equal to a 100% profit as regards their original investments. The manner of such refund, and sharing of profits being set forth in each count, as had been quoted in our original opinion herein.

It is further alleged in each count as follows:

"The said D. L. Walsh, *so acting,* executed the various purchase notes including the above named note for deferred payments on said lands. The remainder of the profit that might be derived from the sale of said land after paying the said syndicate investors the amount of the original money put into the property by them with said 100% profit was to be equally divided between the said D. L. Walsh and Jerome Cherbino Enterprises, Inc."

Each count alleges the endorsement of the note described therein by the payee to the plaintiffs, and that the defendants had not paid the same although long overdue.

The eleventh count declares "That defendants on the 10th day of October, 1925, by their promissory note executed under seal for value received and now overdue promised to pay to the order of one R. E. Robinson, etc." a certain sum specified therein, which note was endorsed by payee, and assigned and delivered to the plaintiffs. This count contains the same allegations as do the other ten regarding the signing of this note by D. L. Walsh, only, and regarding the syndicate arrangements, and the interests of each in the real property purchased by and for the syndicate, and all other matters referred to above as contained

in the first ten counts of the declaration, also as to the same being overdue and unpaid.

The twelfth, thirteenth and fourteenth counts allege the making of certain promissory notes described in each by certain parties other than defendants, on the 3rd day of January, 1925, wherein they promise to pay E. H. Bartholomew and other payees amounts specified in the respective notes described in each of said counts, and the endorsement thereof by each of the payees to the plaintiffs. There are also allegations that they were made in part payment for a portion of certain ocean front real estate situated in Martin County, known to the defendants as the "St. Lucie Syndicate Property" and also known as La Serena Beach, which was assessed by D. L. Walsh and which the defendants agreed to. Each of these counts also sets forth all the matters contained in the first ten counts as summarized above, regarding the investments of the defendants in the syndicate form for the purchase and sale of the lands, and the agency of Walsh and Cherbino to act for and in behalf of such syndicate and as to the refunding of the cash advanced by each, and the division of the profits after sale of said real estate property. Copies of the note described in each sale of said real estate property. Copies of the note described in each count, and the agreements entered into by the members of the syndicate, with Walsh and Cherbino Company, and between Walsh and Cherbino are attached to and made a part of the declaration.

Demurrers to this declaration were filed by some of the respondents, but in so far as is shown from the transcript of the record, neither these demurrers, nor motions to strike nor motions for compulsory amendment to the declaration, were ever ruled upon by the court below. Apparently the only order made is found on page 135 of the transcript of

the record, wherein it is recited, in the order made by the Court on April 25, 1932, that the demurrer of Lee M. Rumsey to each count of the declaration, and plaintiff's application for leave to file an amended declaration came on to be heard, and the court being. advised of its opinion: "It was ordered and adjudged the said plaintiffs be allowed 10 days to file an amended declaration and defendant, Lee M. Rumsey, allowed until rule day in June, 1932, to plead further as advised," to which ruling defendant Lee M. Rumsey *excepted.*

· On May 2, 1932, as appears from the transcript of the record, the plaintitffs filed their amended declaration, containing thirteen counts, in which the cause of action is stated as being for an indebtedness owing by the defendants, *as members of a syndicate or joint adventure to purchase certain ocean front lands in Martin County, Florida, known as La Serena Beach,* but also known to the defendants as *St. Lucie Syndicate Property.* It is alleged in each count that, in pursuance to their joint venture the said lands were purchased by their agents and representatives for and in behalf of defendants; for which properties the obligations of indebtedness set forth in each count, were deferred payments, for which the defendants are indebted to the plaintiffs as particularly set out and described in the respective counts. Each count of the amended declarations sets forth the organization of the syndicate by the defendants to purchase the land, the purchase thereof through Walsh, the cash installments of the down payment contributed by each defendant, the liability of the defendants for the deferred installments of the purchase price, etc. All the facts, circumstances and dealings between the defendants and the owners of the land purchased, and other matters set forth in the counts of the original declaration

were set forth in full in each of the counts of the amended declaration. The amount sued for in each county, being the same as that was sued for in corresponding counts of the original declaration, although in somewhat more extensive terms than in the original declaration.

It is further shown in the respective counts of the amended declaration, that notes were executed representing the deferred payments on the lands, setting forth the notes described in similar counts of the original declaration.

In other words, the amounts sued for in the several counts of the amended declaration, were deferred installments on the indebtedness of the syndicate members, for the purchase price of the land which were evidenced by the promissory notes described in similar counts of the original declaration. The ownership by the plaintiff of the indebtedness sued for in the respective counts of the amended declaration, is alleged.

It is contended now before us, that the causes of action set forth in the respective counts of the amended declaration are new and distinct causes of action from those alleged in the respective counts of the original declaration and therefore there is such a departure on pleading in the amended declaration as to require that it be stricken as a pleading, on demurrer.

An examination of the transcript of the record will reveal that the Judge in the court below, in his order sustaining the demurrer to plaintiffs' amended declaration, based it entirely upon the ground that the amended declaration did not show liability against the defendants as joint adventurers. There is nothing to indicate that the question of departure in pleading was urged before or considered by the court below. It is true that in the demurrer filed by one of the defendants there is found, among the many

other grounds for demurrer, one complaining that there was a departure in pleading, but evidently if it was urged before the Judge it was determined by him that no departure in pleading occurred by the filing of the amended declaration.

As we view the case and the law applicable, in the construction of these pleadings, we do not see that the cause of action described in the amended declaration is such a distinctly different cause of action from that described in the original declaration, as to render it a departure in pleading.

In the case of Livingston v. Malever, 108 Fla. 135, 137 So. 113, we said, speaking through Mr. Justice BROWN:

"One of the tests by which to determine whether an amended pleading is for the same or different cause of action stated in a former pleading, is whether the same evidence will support a judgment rendered upon either."

In the case of La Floridienne v. Atlantic Coast Line R. Co., 63 Fla. 213, 58 So. 186, 187, this Court speaking through Mr. Justice WHITFIELD, said:

"Where a declaration is amended or a new count added thereto, *which is a mere restatement in a different form of the same cause of action, that was originally pleaded,* the amendment or added count has relation to the beginning of the action insofar as it is affected by the statute of limitations. But where a cause of action set forth in an amended pleading in a pending litigation is *new, different* and *distinct* from that originally set up, there is no relation back * * * under the statute and liberal rules of the courts, *amendments of defects and errors in pleading are liberally allowed for the purpose* of determining in the existing suit the real *questions in controversy between the parties; and when the amendment brings in new matter arising out of the*

*same general transaction and occurrences it may not be a departure in pleading."* (Italics supplied.)

Did the amended declaration in the case at bar allege a cause of action so *new, different* and *distinct* from that alleged in the original declaration as to make it a departure in pleading under the law as recognized by this court? Suppose, that the counts of the original declaration, should be allowed to stand as properly stating a cause of action, against *all* the defendants, on the theory advanced therein, as making the notes sued on, the notes of the defendants, and pleas were filed denying consideration for the instruments sued upon or an issue made by plea denying the notes as the defendant's obligation, would not the testimony to support the plaintiff's case be substantially the same as that necessary to secure judgment upon the allegations in the several counts of the amended declaration under pleas traversing its allegations, or otherwise taking issue on the allegations by other pleas? We think substantially the same evidence would be required, under the circumstances, outlined, to support a judgment under both declarations.

There is quite a difference in the allegations of the several counts of the original declaration in the instant case, and the allegations in the first count of the declaration considered by this Court in the case of Folk v. Salario, *et al.,* 108 Fla. 135, 146 So. 193, relied upon by the defendants in error, as being conclusive of the correctness of their contention that the cause of action in the amended declaration in the instant case is a departure from the cause of action laid in the original declaration.

In the case of Folk v. Salario, *supra,* the plaintiff Folk filed his declaration against the defendants wherein he sued L. Salario, P. Buffa, J. L. Drane, J. P. Lopez, Jose M. Duez, Rafeal Ramos, Donate Zenger, E. I. Solomon, Jose

R. Colmenres, Daniel Gracowaner, Alex Hecht, Eliaz Mienez, L. Liebmann, Jose Suarez, Jr., and Angel Alonzo jointly and severally, alleging that L. Salario, *acting for himself and other defendants naming them, executed a promissory note to the plaintiff* for a certain sum, etc. There appears no other allegation whatever in the declaration in the Salario case as to why or in what capacity he executed the note for the other defendants named. There were no allegations of fact to show any relationship between him and the other defendants as joint adventurers or otherwise; there was only the alleged conclusion of the plaintiff that L. Salario acted for the other defendants in the execution of the note, to show any connections such defendants had with the note. So far as the allegations of fact of the first count of the declaration in the case showed, the note was for the sole obligation of, and on account of L. Salario who signed it.

After the death of Folk his widow in her representative capacity as executrix of the estate of her late husband, having secured the revival of the suit, in her representative capacity, filed a new declaration against Salario and each of the other defendants, and others unknown, basing her right of action on an implied contract upon the part of defendants to pay for certain lands, a sum equivalent to the amount named in the note sued upon in the original or first declaration. This court in the Folks v. Salario case held: "Where original declaration was on one defendant's note, though others were joined as *allegedly* liable with him, second declaration filed after plaintiff's death for breach of implied promise to pay for lands, conveyance of which to one defendant allegedly benefited all as joint adventurers, *held* demurrable." See headnote No. 4.

Mr. Justice ELLIS, speaking for the court said in the text

of the opinion written in the Folks-Salario case, page 138, 108 Fla., said:

"There has been much discussion in the briefs as to the difference in the *form of action,* the plaintiffs in error contending that while the two declarations showed a difference in the cause of action, there was no difference in the cause of action, because each declaration was in reality based upon the same transaction, as to the indebtedness arising from which the note of Salario was but the written evidence. *That contention is largely an assumption gathered from the allegations of the second* declaration concerning the transaction out of which the promissory note of Salario emerged, but the fact remains that the first declaration rested upon the failure *to pay a promissory note which was the cause of action* behind the declaration." (Italics supplied.)

Mr. Justice ELLIS further said in the Folk v. Salario case:

"The action declared on in the first declaration could not have been maintained against the fourteen defendants who did not sign the note. *Merely naming them as being liable on the note* and causing them to be brought into court did not alter the action as being one for damages for breach of the express promise to pay." In the instant case each of the counts of the original declaration, in undertaking to state plaintiff's cause of action against the defendants, did far more than *"merely naming them as being liable on the note."* The allegations in each of the several counts of the original declaration in the case now under consideration charges not only that the note is the obligation of *all* the defendants, although signed by only one of them for himself and the others, *but* all the facts which are claimed to have made it the note of each and all of them, were clearly

and specifically alleged. The facts set forth in each count of the declaration, clearly demonstrated that the note described therein although signed only by D. L. Walsh, represented the indebtedness of all the defendants as joint adventurers, for deferred payments on lands purchased by and for them. While the several counts of the first declaration may have set forth the evidence or recognition of the indebtedness of the defendants in the wrong form, that is by a promissory note signed by only one of them, yet all the additional allegations of such counts did set forth the *real indebtedness,* which, as we have held in the original opinion, was properly alleged in the several counts of the amended declaration.

Setting aside the possible technical failure of *all* the defendants *to sign the note* thereby rendering a suit based thereon as an express written contract of *all* the defendants, probably not maintainable, the facts set up in such counts of the original declaration *do* show the *actual* indebtedness of the defendants, as is probably more properly and accurately pleaded in the amended declaration.

The promissory notes signed by one of the joint adventurers for all of them, did not operate as a *payment* or *discharge of the debt.* If the note were the notes of all the defendants, it would only be the written evidence of the debt. Therefore we think that the various counts of the amended declaration were not a departure in pleading, but rather they were counts of a declaration setting forth in another way, that which constituted the *real indebtedness* which was alleged or undertaken to be alleged in the original declaration. This does not in any measure reverse, nor overrule our findings and holdings in the case of Folks v. Salario as rendered on the pleading in that case.

Clearly, it seems to us, the cause of action as alleged in

each count of the amended declaration, sets forth the real
and true cause of action in but another way than did the
allegations in the several counts of the first or original dec-
laration. The original declaration possibly *mistakenly*
undertook to declare upon the *notes* signed by one but as
alleged for *all* the defendants, as express contracts to pay
the installments of a debt for deferred payments on land,
thinking under the circumstances alleged in such counts,
that such note was the express contract of each and all the
defendants.

The amended declaration, while not in its several counts
declaring on the *notes,* declares on the *real indebtedness*
that is, the deferred payments of the consideration for
the lands purchased by the syndicate composed of the
defendants.

Suppose that when the original declaration was filed the
thirteen counts now appearing as an amended declaration
had been added simply as further counts of such original
declaration, would they have been considered departures in
pleading? We think not. In many cases litigants file sev-
eral counts to their declaration, setting forth the cause of
action, in different ways, in order that there may be no
technical objections successfully made to the manner of
pleading their cause of action. Often declarations contain
counts on written agreements, or written express contracts,
and other counts declaring upon the indebtedness, the sub-
ject of such express contracts, in another count, some
time on common counts, and yet no departure in pleading
is thereby committed.

"Except in jurisdictions where it is held that no amend-
ments are permissible which change the form of action,
it is very generally held that so long as the cause of action
*itself* is not changed, it is permissible to change by amend-

ment the form of action in an action *ex contractu* to a different form of action *ex contractu*. Assumpsit may be changed to covenant or debt, or the form of action may be changed from covenant to assumpsit, or debt to covenant. So an action begun in assumpsit may be changed to account. These amendments are admissible at any stage of the proceedings." 49 Corpus Juris 523.

"An amendment adhering to the original transaction but seeking to recover upon an implied contract or *quantum meruit,* instead of upon an express contract, or seeking to recover upon an express contract instead of an implied contract or *quantum meruit,* is commonly permitted, *and such an amendment is not regarded as introductive of a new cause of action."* Id. (Italics supplied.)

The law of Florida regarding amendments is found in Section 2629, Revised General Statutes, Section 4295 C. G. L., and its provisions are as follows:

"Upon application of any party desiring amendment the courts of the state shall at all times amend all defects and errors in any pleading or proceeding in civil causes, whether there is anything to amend by or not and whether the defects or error be that of the party applying to amend or not; and all such amendments shall be made with or without costs and upon such terms as the court may deen fit; and all such amendments as may be deemed necessary for the purpose of determining in the *existing suit the real question* in controversy between the parties shall be made if duly applied for." (Italics supplied.)

In the instant case the plaintiffs by permission of the court filed the amended declaration doubtless for the purpose of having determined in the existing suit the real question in controversy without running the hazard of hav-

ing the cause of his action against *all* defendants set forth in his original declaration held to be improperly pleaded.

As we have already said, in this opinion, the original declaration still remains in the record, and is in the present state of the record a live pleading. Under the statute quoted above the permission to file the amended declaration and the actual filing thereof, simply brings into the record an amended declaration which might be considered as constituting additional counts to the first declaration still in the record, such counts pleading in another way or form the cause of action contained in the first declaration.

After having maturely considered the question as to whether or not there has been a departure of pleading in the amended declaration before us in the main case, we have reached the conclusion that there has not been, and that there is not such a departure in pleading contained in the amended declaration as is contended, and that our opinion heretofore rendered herein should not be rescinded or disturbed. It is therefore the judgment of the court on this *rehearing* that our judgment reversing the judgment of the court below be and remain the judgment of the court and that the judgment of the court below be reversed.

WHITFIELD, C. J., and TERRELL, BUFORD and DAVIS, J. J., concur.