68 So.2d 163 (1953)
DONAHUE et al.
v.
DAVIS et al.
Supreme Court of Florida, Special Division B.
September 22, 1953.
Rehearing Denied December 4, 1953.
*164 Anderson & Nadeau, Miami, for appellants.
Sibley & Davis, Ellis, Ervin & Wakeman and W.F. Parker, Miami, for George N. Davis and Joseph O'Connell in proper person for Joseph O'Connell and O'Connell Inv. Co., appellees.
R.P. Terry, Miami, for intervenor Marion Brooks.
SEBRING, Justice.
The appellants, who were the plaintiffs in the court below, instituted this suit in the Circuit Court of Dade County, Florida, against the appellees for the purpose of establishing a joint venture contract alleged to have been entered into by the parties and for an accounting. The decree in the cause was in favor of the defendants and the plaintiffs appealed.
The complaint in the cause alleged, in substance, that early in 1945 the defendants, George N. Davis and Joseph O'Connell, induced the plaintiffs to participate in a joint venture, the object of which was the purchase and sale of a certain tract of real property at a profit. The O'Connell Investment Company was incorporated as a Florida corporation by the individual plaintiffs and defendants for the express purpose of acquiring and holding title to the lands acquired in the venture for the benefit of the four parties. As part of the contract between the parties it was agreed that each of them would contribute one-fourth of the purchase price for the property and receive one-fourth of the capital stock of the corporation. Pursuant to this arrangement the land was acquired and deeded to the corporation.
The defendant George N. Davis represented to his coadventurers that he had acquired title to the land at a price of $15 an acre, and agreed that he would convey the land to the corporation for the consideration he had paid for it, the amount paid by him to be adjusted to his contribution of one-fourth of the purchase price. Based upon the representations as to the cost thereof, the land was conveyed to the corporation for a stated consideration of $18,900, one-fourth of which was to be contributed by each of the parties to the agreement. The plaintiffs each contributed $4725 to the venture, and with these funds plus a relatively small contribution made by O'Connell, the land was purchased.
The representations made by Davis that he owned the property and had paid for it the sum of $15 an acre was false. In truth, he was not the owner of the land at the time but had a mere oral understanding with the owner that he might purchase the land at a price of $9 an acre. By virtue of his breach of duty in failing to apprise his coadventurers of the true facts, and by reason of his making a secret profit out of the deal by purchasing from the owner at $9, instead of $15, an acre, Davis forfeited any right to any profits that he may have realized on the transaction by O'Connell Investment Company and forfeited any right to participate on an equal basis with the plaintiffs in the assets of the O'Connell Investment Company, or the shares of stock of the corporation, acquired pursuant to the joint venture.
The defendant, Davis, at the time of the sale of the lands to O'Connell Investment Company pursuant to the joint adventure, secretly charged a commission for the sale of the land to the corporation. By virtue of his failure to apprise his coadventurers of this fact, Davis forfeited, in addition to the right to profits, any right to the commission on the sale of the lands.
The defendant Joseph O'Connell knew of the breach of trust perpetrated by Davis *165 and plaintiffs believe that he participated in said breach, thereby forfeiting any profit which accrued to O'Connell Investment Company from the acquisition of the land subsequently transferred to the corporation at $15 an acre, and the right to one-fourth of the stock of the corporation.
The prayer of the complaint was for an accounting between the parties as to the contributions made by each, and that the individual defendants be adjudicated to have no interest in the lands, or, in the alternative, that the defendants be adjudicated to be trustees of the stock for the plaintiffs and be required to transfer their stock to the plaintiffs in the measure of the respective capital contributions of the parties.
The defendant Davis filed an answer to the complaint in which he admitted that the plaintiffs each contributed $4725 to the capital of O'Connell Investment Company, and that in purchasing the land from the owner he paid less than $15 an acre. He denied that a joint venture existed among the parties or that there was any agreement as to the amount of capital each was to contribute. He alleged upon information and belief that the defendant Joseph O'Connell had contributed only $900 toward the purchase of the land. He also averred "that in that certain cause now pending * * * styled George N. Davis vs. O'Connell Investment Company, et al., Chancery Cause No. 104824-B, this defendant, by final decree entered, has been decreed to be the owner and holder of one-fourth of the outstanding capital stock of the O'Connell Investment Company, and that each and every other issue raised in the bill of complaint filed in this suit has been thereby settled and adjudicated, and this defendant, therefore, shows * * that each and every issue raised or attempted to be raised in this litigation is accordingly res adjudicata."
The defendant O'Connell filed an answer to the complaint in which he denied that he had induced the plaintiffs to participate in a joint venture and that Davis had represented that he had acquired title to the lands and would convey the lands to the corporation for the consideration he had paid for it, but that the true facts were that Davis, at all times, represented to the plaintiffs and to him, O'Connell, that the sale of the property to the corporation was to be from the true owner and not from him, Davis. He also averred that Davis had falsely represented to the plaintiffs and to him, O'Connell, that the purchase price of the land was to be $15 an acre, and that based on these false representations as to cost he and the two plaintiffs each contributed $4725; that he contributed his $4725 by paying to Davis the sum of $1935 in cash, by receiving a credit from Davis in the sum of $900 money then due and owing to him by Davis, and by receiving a credit from Davis in the sum of $1890, as a commission on the sale of the land involved. Finally, he alleged that Davis had informed him that the land was being purchased at a price of $15 an acre, or $18,900 for the whole; that a commission had been allowed by the true owner to Davis and that Davis would in turn give the commission of $1890 to O'Connell, provided he, O'Connell, would pay the balance of one-fourth of the purchase price of the property and procure a purchaser for the other one-half interest, which he did (the plaintiffs being the purchasers); that Davis would then contribute an equal amount for the purchase price of the property, and that a deed would be taken in the name of O'Connell Investment Company; that O'Connell had induced the plaintiffs to contribute one-half of the alleged purchase price; that Davis had paid only $11,367 for the property and had contributed nothing to the transactions; and that Davis had thereby made a secret profit.
The cause thus being at issue on the complaint and answers a special master was appointed to hear the evidence and to make findings. After all evidence had been submitted the master filed a full and comprehensive report in which he found substantially as follows:
1. A fiduciary or confidential relationship existed between the parties and in *166 connection with the acquisition of the land each was acting as the agent of and for the others.
2. A joint venture existed between the parties for the purchase of the property from the owner, a Mrs. Price, through the medium of O'Connell Investment Company.
3. Davis breached his trust to the remaining coadventurers and hence holds his 25% of the stock of the corporation as trustees for the others.
4. Davis was under a duty to disclose to the other parties to the transaction every fact which might in any way influence their judgment, and his failure to do so, and his withholding of material information from the other parties, operated as a legal or constructive fraud against them.
5. Davis represented the purchase price of the property as being $15 an acre, or $18,900, whereas the actual consideration received by the owner for her deed conveying the property to O'Connell Investment Company was $11,232.31.
6. Davis represented that each of the parties was to contribute toward the purchase of the property the sum of $4725. Plaintiffs Donahue and Kilburn each paid this amount to Davis. The defendant O'Connell paid to Davis $1935 in cash, the sum of $900 represented by credits for money due by Davis to O'Connell, making in total cash or its equivalent, the sum of $2835.
7. O'Connell breached his trust to the plaintiffs by not disclosing to them the manner by which he undertook to pay for his proportionate share of the adventure, and his failure to make such disclosure made him trustee to the plaintiffs for the number of shares of stock held by him which were represented by the $1890 commission for which he claimed credit.
8. Davis paid nothing for his stock in the corporation. In addition to this stock, Davis received from Donahue, Kilburn and O'Connell in excess of the purchase price the sum of $1025.69.
9. Equity should restore the parties by reallocating the stock to each party in the ratio that his actual contribution bore to the actual purchase price of the property.
The defendant Davis filed exceptions to the master's report. These were sustained at final hearing and a decree containing the following findings was rendered in favor of the defendants:
1. In the summer of 1945, the defendant, Davis, a licensed real estate broker, had a listing to sell a tract of some 1260 acres of land, the property of a Mrs. Margaret Bryan Price, for the consideration of $10 an acre with 10% commission to him. After several unsuccessful attempts to sell the land to third parties, Davis obtained an agreement from the owner whereby she agreed to sell the land to him, or his nominee, on a net or "overage" basis of approximately $9 an acre, the price and identity of his purchaser on resale being matters of no concern to her. The defendant, O'Connell, an office associate of Davis, interested the plaintiffs in the transaction, and they, after an independent personal investigation of the property, agreed to buy a half-interest therein on the basis of $15 an acre. The transaction was consummated in September 1945 by delivery of a deed from Mrs. Price to the O'Connell Investment Company upon payment through Davis to her of $11,232.31. This sum was paid to Mrs. Price by Davis partly by a cashier's check and partly by personal check. Certificates for 15 shares of the capital stock of O'Connell Investment Company were issued, at or about the same time, to each of the individual parties. The payments of $4725 by each of the plaintiffs constituted most of the cash involved in the purchase of the property "although the sale and purchase was controlled by Davis and without his knowledge and efforts the purchase could not have been made."
2. There was merit to the contention advanced by Davis that the subject matter of the suit "is res judicata by reason of the fact that all issues before the court in the pending suit were, or could and should *167 have been settled in the prior litigation * * * that the plaintiffs herein were apprised early in the previous litigation of the manner in which Davis and O'Connell acquired their interests, and that they had ample opportunity to assert their claims by amendments to their answers and thereby completely settle the question involved in both suits, i.e. the proper ownership of the stock issued to Davis. Failing to avail themselves of such an opportunity it would appear that they are estopped to relitigate the same issue in another action * * *."
3. The offer by Mrs. Price to sell the land to Davis, at least so far as third parties were concerned, "amounted to an option, or at least an agreement with the vendor, by the terms of which * * * he had something of value which he was not obligated to pass on to the plaintiffs gratuitously [and] accordingly he was dealing with them at arm's length and was not legally bound to admit them to his favorable situation."
4. The contention of the plaintiffs that they were influenced in participating in the transaction "by their belief that everyone was making an equal cash contribution" was not supported by the weight of the evidence; indeed the evidence showed that the plaintiffs "were experienced buyers of real estate and that they both made their inspections and reached their conclusions in the absence of, and prior to their first meeting with Davis * * * [and] made up their minds independently that they were making a good bargain and elected to act upon their conclusions in that respect without urging on the part of anyone * * *"; consequently, the plaintiffs' contention that they were fraudulently induced to enter into the transaction upon the belief that all parties were to contribute equal amounts to the purchase of the property was not proven by "clear, convincing and overwhelming" evidence.
5. Even assuming that there might be some evidence in the record in favor of the plaintiffs on the issue of fraud, it is conceded by all parties that since the acquisition of the property by the corporation the value thereof has enhanced greatly and hence no right of recovery exists in favor of the plaintiffs because "fraud without resulting pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal."
6. "While the court is not unmindful of the proposition ably urged upon it by plaintiffs' counsel, * * * that the law may impose a forfeiture when disloyalty to a trust or fiduciary relationship is shown to exist, the court is not inclined to adopt such a harsh rule in the circumstances of this case, and it specifically finds that no sufficient showing has been made that the plaintiffs were actually misled as they allege * * *."
Based on these findings the court decreed (1) that the equities of the cause were with the defendant Davis; (2) that the defendants Davis and O'Connell should be required to equalize their contributions with those of the plaintiffs and that an accounting should be had for that purpose; and (3) that the property should be sold and the respective individual parties charged or credited with such cash amounts as shall be necessary to equalize the cash investments of the four stockholders of the O'Connell Investment Company, and their respective contributions to the corporation's purchase price of the land.
The appellants have assigned as error the decree rendered against them, and each of the findings of the trial court upon which it is based.
The first proposition with which we shall deal concerns the matter of res judicata. While the trial court did not expressly bottom its decree upon this defense but decided the case upon its interpretation of the effect of the evidence as to the merits, it nevertheless found that there was merit in the contention that the issue raised by the plaintiffs had been concluded by the prior suit in which the present plaintiffs were parties.
*168 We find ourselves unable to agree with the conclusion reached by the trial court on this issue, either upon the ground that the matter was res judicata by reason of the prior suit, that the plaintiffs were estopped from prosecuting the pending suit by reason of the rendition of the decree in the prior suit, or that the plaintiffs have precluded themselves from maintaining the present suit because of their failure to set up the subject matter of their present suit by an amendment to their answer in the prior litigation after they had been apprised in the prior suit of the manner in which Davis had acquired his interest in the stock of O'Connell Investment Company, the corporation that had taken title to the land pursuant to the joint-venture agreement of the parties.
As to the prior suit referred to by the defendant Davis in his answer, and by the trial court in its decree, the record before us shows that it was one brought by Davis against the present defendants O'Connell Investment Company and O'Connell, and the present plaintiffs, Donahue and Kilburn, to establish ownership of 25 per cent. of the stock of O'Connell Investment Company as between Davis and O'Connell. The complaint alleged, in substance, the incorporation of the O'Connell Investment Company by Davis, O'Connell, Donahue and Kiburn; that each of the parties subscribed to and were the owners of one-fourth of the stock of the corporation; and that the corporation had acquired title to the lands which are involved in this present litigation, "the plaintiff contributing his full share of the purchase price thereof * *."
It alleged, further, that subsequent to the time that 25 per cent. of the stock of the corporation had been issued to him, Davis, the defendant O'Connell had converted the stock certificate evidencing Davis' ownership of the stock and had refused to return the same; that since the conversion by O'Connell of the stock certificate, O'Connell and Donahue had excluded Davis from corporation meetings, had been secretly selling timber standing on the lands owned by the corporation, and selling tracts of land, and had been pocketing the proceeds from these ventures, without proper authorization from the corporation and without allowing Davis to know what was transpiring.
The prayer of the complaint was for the appointment of a receiver for the assets, books and records of the corporation; for an order enjoining O'Connell and Donahue from disposing of the plaintiff's stock certificate; for the removal of O'Connell and Donahue as directors of the corporation; and for an accounting between the parties "in order that the assets of the corporation may be determined and the liability of each of the parties thereto and to this plaintiff be fixed and determined and proper distribution be made by and between the parties."
To this complaint O'Connell filed an answer in which he admitted that the property described in the complaint was purchased as alleged and that each of the parties paid his proportionate part of the purchase price thereof. He denied that Davis was the present owner of the stock and averred that prior to suit Davis, for a valuable consideration, had transferred and assigned his stock certificate to one Gregory and that Gregory was therefore the owner of the stock in the corporation. He admitted that the corporation had sold certain standing timber and parcels of land from the property belonging to the corporation but alleged that inasmuch as Davis had sold his stock in the corporation he had no right to any of the proceeds therefrom or to interfere with the activities of the corporation.
Donahue and Kilburn, the plaintiffs in the present suit, filed similar answers.
At final hearing the trial court entered its decree in which it found in respect to the main and dominant issue in the suit, that is, the issue as to the ownership of the stock claimed by O'Connell to have been sold to one Gregory, that Davis was the true owner and hence should be reinstated as a director of O'Connell Investment Company; that the stockholders and directors of the corporation should meet and attempt to adjust their differences; *169 that if they could not arrive at a mutually satisfactory agreement compromising the differences between the parties the lands held by the corporation should be sold, and that out of the proceeds of the sale, the master should make such adjustments with reference to the various credits and debits existing between the parties and the corporation as should be necessary to adjust the differences between the parties.
The decree concluded with this finding: "There is nothing in this decree that adjudicates or is intended to adjudicate any rights which the defendants, James Kilburn and John J. Donahue may have against the plaintiff, or the defendant, Joseph O'Connell, on account of any matter arising out of the purchase of said property or on account of any claims and demands which may exist between them."
It is apparent from a study of the pleadings and proceedings in the prior suit that the main and dominant purpose of the suit was to establish Davis' right to stock in the O'Connell Investment Company as against O'Connell, who, it was charged, had converted the same to his own use, and, upon establishment of that fact, to require of O'Connell and Donahue an accounting in respect to certain assets to which the corporation was entitled.
The special master in the prior litigation expressly found this to be the dominant purpose of the suit; the trial court approved his findings; and we concurred in these findings by affirming the final decree entered in the suit. See O'Connell v. Davis, Fla., 44 So.2d 811.
On the other hand, the main and dominant purpose of the present suit brought by Donahue and Kilburn against Davis and O'Connell is to determine whether prior to the time Davis had acquired the corporate stock, the ownership of which, as between Davis and O'Connell, was the subject matter of the prior suit, he, Davis, had defrauded his coadventurers in respect to the transaction whereby the parties plaintiff had put up money for the purchase of certain lands, title to which was taken in the name of O'Connell Investment Company and Davis had fraudulently acquired one-fourth of the stock of the corporation by means of his false and fraudulent representations.
The rule is well settled that in order to make a matter res judicata four conditions must concur, namely: (1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action, and (4) identity of the quality in the person for or against whom the claim is made. Brundage v. O'Berry, 101 Fla. 320, 134 So. 520; Gray v. Gray, 91 Fla. 103, 107 So. 261; Coral Realty Co. v. Peacock Holding Co., 103 Fla. 916, 138 So. 622; City of Miami Beach v. Miami Beach Improvement Co., 153 Fla. 107, 14 So.2d 172.
It is plain that the complaint in the prior suit and the complaint in the present suit were framed upon entirely different theories and sought entirely different relief. Consequently the doctrine of res judicata is not applicable, because the things sued for in the two suits were not identical and the causes of action were not the same.
Neither can it be said that the plaintiffs in the case at bar are precluded under the doctrine of estoppel by judgment from prosecuting their present suit; for the rule is that where a later suit between the same parties as were involved in a prior litigation is upon a different claim or demand the judgment in the prior action will not operate as an estoppel except as to those matters "actually litigated and determined in the initial action", Gordon v. Gordon, Fla., 59 So.2d 40, 43, or those "rights or questions * * * necessarily involved in the conclusions reached". Peckham v. Family Loan Co., 5 Cir., 196 F.2d 838, 839. See also Gray v. Gray, supra.
The trial court has indicated in the final decree appealed from that the plaintiffs have estopped themselves to maintain the present suit because of the fact that during the taking of testimony in the prior suit Davis divulged the price which he had actually paid Mrs. Price for the property *170 and that at that juncture the present plaintiffs had the opportunity to amend their answer so as to project into the prior suit by way of counterclaim or other affirmative pleading, the issue which they are now raising in the present litigation.
We cannot agree with this conclusion. Equity Rule 35(1), 30 F.S.A., requires of a defendant that he assert a counterclaim only where the subject matter thereof arises out of the same transaction which is the subject matter of the suit. Tilton v. Horton, 103 Fla. 497, 137 So. 801, 139 So. 142. The subject matters of the suits which we are considering were with reference to two entirely different transactions and neither was germane to the other. Hence, the plaintiffs in the present suit were not required to set up by way of a counterclaim in the first suit the transaction which forms the subject matter of the present litigation.
The next matter we shall consider concerns the finding by the circuit court that the offer by Mrs. Price to sell the land to Davis "amounted to an option, or at least an agreement with the vendor, by the terms of which * * * he had something of value which he was not obligated to pass on to the plaintiffs gratuitously, [and] accordingly he was dealing with them at arm's length and was not legally bound to admit them to his favorable situation upon an equal basis * * *."
We have difficulty in agreeing with this finding. As we understand the rule, a binding option contract or agreement requires a valuable consideration to support it. Unless supported by a consideration, an "option" is considered as a mere offer which may be withdrawn at any time before acceptance. Thompson on Real Property, Vol. 8, sec. 4572; Willis v. Van Woy, 155 Fla. 465, 20 So.2d 690. It is plain from the record that Davis paid nothing to Mrs. Price as a consideration for the agreement on her part to sell him the property for a stated consideration. Therefore, Davis had no binding option contract but only a mere offer of contract on the part of Mrs. Price which she could have withdrawn at any time before acceptance without becoming legally liable for such withdrawal.
Assuming that the parties in the instant case were joint adventurers  an issue we shall presently consider  it would be incorrect to say, as did the trial court in its final decree, that because Mrs. Price had offered to sell the land to Davis at $9 an acre "he had something of value which he was not obligated to pass on to the plaintiffs gratuitously, [and] accordingly he was dealing with them at arm's length and was not legally bound to admit them to his favorable situation upon an equal basis * * *." This is so for the reason that the record shows that prior to the time Mrs. Price's offer to sell the property to Davis, or his nominee, had been accepted by the payment of the purchase price, the parties to this suit had already agreed, according to the contentions of the plaintiffs, to embark upon the joint venture for the purpose of purchasing the property on equal terms and with equal contributions. Assuming this agreement to have existed, it is plain that even if in other circumstances Davis might not have been obligated to pass on to the plaintiffs gratuitously whatever by his prior negotiations he had obtained from Mrs. Price, once the joint venture arrangement came into being he was bound to make full disclosure and share on equal terms the fruits of his negotiations with the parties to the arrangement, and hence the transaction consummated by him was, as a matter of law, as trustee for all the coadventurers by reason of the existence of the fiduciary relationship arising out of the status of the parties. See Willis v. Van Woy, supra; 30 Am.Jur., Joint Adv. §§ 35, 36, p. 696; Restatement of the Law of Trusts, vol. 2, p. 1249.
As must be apparent, the dominant issue in the present litigation is as to whether in the purchase of the property from Mrs. Price the parties were engaged in a joint venture; and, if so, whether Davis, one of the parties to the transaction, observed toward those with whom and for whom he was dealing, the duties and obligations *171 imposed by law with reference to parties in such relationship.
A joint adventure has been defined as an agreement among two or more persons to purchase specific property for speculation or resale at a profit, the only distinction between such an agreement and one of partnership being the limited and specific object in view. Drew v. Hobbs, 104 Fla. 427, 140 So. 211, 141 So. 596. The fact that joint adventurers may determine to carry out the purpose of the agreement through the medium of a corporation does not change the essential nature of the relationship. Mendelsohn v. Leather Mfg. Corp., 326 Mass. 226, 93 N.E.2d 537. Compare Fancher v. Rumsey, 121 Fla. 631, 164 So. 688.
As to the general duties and obligations of joint adventurers toward each other, they, like co-partners, owe to one another, so long as the relationship continues, the duty of the finest and highest loyalty. "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. * * * Conduct subject to that reproach does not receive from equity a healing benediction." Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 546, 62 A.L.R. 1.
The principle is peculiarly applicable in a situation where one person induces another to enter into a transaction for the joint purchase of property on equal terms and for the benefit of both. In such a case it becomes the duty of the purchaser toward his coadventurer fully and honestly to disclose the true purchase price of the property to be acquired together with all terms, conditions and other details of the transaction; and he lays himself open to an action for fraud if he misrepresents the matter in any essential particular and thereby induces his associate to contribute more than his share of the actual consideration paid, or by virtue of undisclosed facts or secret negotiations with the seller receives for his share more than is his due under his arrangement with his associate. Willis v. Fowler, 102 Fla. 35, 136 So. 358. For, as stated in Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 54 A.L.R. 1173, "He who undertakes to act for another in any matter of trust or confidence shall not in the same matter act for himself against the interest of one relying upon his integrity."
Upon the issue as to whether a joint venture actually existed between the parties in respect to the purchase of the property the special master found in favor of the plaintiffs. We think that in view of the great mass of evidence before him proving the relationship between the parties this finding was proper. As the result of the relationship which the master found to exist between the parties, the defendant Davis duped the plaintiffs into putting up the great bulk of the purchase price of the property and thereby obtained for himself, without the investment of a single dollar, the difference between the pretended sales price of $18,900 and the amount of $11,232.31 actually paid to Mrs. Price for her interest in the property. Since he misrepresented the material facts to his coadventurers, and contributed nothing to the purchase price of the property, it would be the height of inequity to allow him to retain any interest therein. Lane v. Wood, 259 Mich. 266, 242 N.W. 909; Mannheimer v. Phinney, 167 Minn. 279, 209 N.W. 7; Fink v. Weisman, 129 Cal. App. 305, 18 P.2d 961. 48 C.J.S., Joint Adventures, § 11. Accordingly, it is our duty to reverse the trial court in respect to this issue and to hold with the view of the special master "that the fifteen shares of the common capital stock of O'Connell Investment Company issued and held by the defendant Davis were acquired by him through fraud and it is against equity that such shares should be retained by Davis."
The fact that since the acquisition of the property by the parties through the medium of the corporation the property has risen in value and hence the plaintiffs *172 have profited by the venture despite the fraud practiced by Davis, does not change our conclusion in respect to this issue. The contract between the parties amounted, in legal effect, to an agreement that each would contribute one-fourth of the true purchase price and each would be entitled to a one-fourth interest, including the profits thereon, on the basis of the actual price paid. Compare Moe v. Lowry, 69 Colo. 371, 194 P. 363; Arnold v. Ames, 159 Tenn. 635, 21 S.W.2d 386; Fitch v. Ingalls, 271 Mass. 121, 170 N.E. 833. 30 Am.Jur., Joint Adv., § 36.
The trial court apparently attached great significance to the fact that prior to entering into the transaction, the plaintiffs Donahue and Kilburn inspected the property for the purpose of determining whether in their opinion the land was worth $15 an acre, the price Davis fraudulently represented was necessary to be paid in order to acquire title. This fact might have been material had the parties been dealing at arm's length as buyer and seller in respect to the purchase of the property; but it has no significance in the light of the fraudulent representations made by Davis to induce the plaintiffs to enter into a joint venture by which the property was to be acquired at the falsely stated price of $15 an acre, when the fact was known to Davis that it could be purchased for a lesser figure. Whatever the worth of the property might have appeared to the plaintiffs to be upon inspection, the fact remains that Davis, in order to induce the plaintiffs to enter into the joint venture, falsely represented that the cost was $15 an acre, and the plaintiffs were entitled, from the very nature of the proposal made by Davis to repose confidence and trust in his statements, and to expect of him a truthful disclosure of the actual amount at which the owner was willing to sell the property. Annotation 62 A.L.R. 13. Compare Stephens v. Orman, 10 Fla. 9; Dale v. Jennings, 90 Fla. 234, 107 So. 175.
Finally, we consider that portion of the decree which deals with the interest in the property asserted by O'Connell. The special master found in respect to this claim that in view of the relationship of the parties, one to the other, O'Connell was under the duty and obligation to disclose to the plaintiffs the manner and means by which he intended to pay for his proportionate share in the venture, namely, by crediting on his share of the purchase price a secret commission of $1890 (the equivalent of six shares of stock in the corporation) which Davis was to allow him for his aid in interesting Donahue and Kilburn in the venture. Because of this failure to make a full and fair disclosure the master found in his report that O'Connell became a trustee for the plaintiffs to the extent of the six shares of stock held by him. And so far as we can ascertain from the record before us O'Connell never filed exceptions to this finding of the special master; nor are we quite clear from a study of the decree to what extent, if any, the trial court granted relief to O'Connell from this portion of the special master's findings.
However that may be, we are concluded from a careful study of the evidence that the special master, who had the witnesses before him, ruled correctly in disallowing the commission and that his findings and recommendations in this particular should have been confirmed by the trial court. Harmon v. Harmon, Fla., 40 So.2d 209.
Accordingly, the decree appealed from should be reversed with directions that a decree be entered overruling the exceptions taken by Davis to the report of the special master and granting relief to the plaintiffs in accordance with the recommendations of the master and in conformance with this opinion.
It is so ordered
ROBERTS, C.J., and THOMAS, J., and PATTERSON, Associate Justice, concur.