PER CURIAM.
The appellants as plaintiffs filed their suit for declaratory decree and the appellee answered and counterclaimed. The chancellor made detailed findings of fact, dissolved the corporation, ordered distribution of its assets to the stockholders by division of one-third thereof to Mr. and Mrs. Magurno, one-third to Mr. Dobry, and one-third to Mr. Dobry as Executor of his wife’s estate. The plaintiffs appealed, and the defendant cross-appealed.
It was the plaintiffs’ position that the title to the approximate 6500 acres of land involved in the suit was vested in the corporation; that the stock of the corporation was equally divided between the Magurnos and the Dobrys; and that upon dissolution of the corporation, its assets should be so divided. It was the defendant’s position that they initially owned all of the lands; that they conveyed the lands to the corporation under an agreement with the Magurnos to develop the land; and that the land was not developed and, therefore, there was a failure of consideration. In addition, the defendant contended that there was fraud and overwhelming influence exercised by the Mag- *337 urnos; that the transaction between the parties was really a loan of money by the Magurnos to the Dobrys; or, that there was a frustrated joint venture.
The land was acquired by the Dobrys over a period of time by various purchases and trades in which they had a cash investment of $62,000.00. They desired to build a home at an approximate cost of $30,000.00. Seeking funds to accomplish this purpose, they contacted the Magurnos and at this point the testimony of the parties vary greatly as to the exact promises. At any rate, the result was that the Dobrys conveyed all of the land to the corporation, receiving as cash consideration the sum of $31,078.00. The corporation was organized with an authorized capital stock of 100 shares of common stock of no-par value, and in the Articles of Incorporation, each of the Magurnos subscribed to twenty-five shares and each of the Dobrys subscribed to twenty-five shares. No minutes of the corporation were kept, and it appears that there were no further proceedings in perfecting the organization of the corporation, and the stock was never actually issued.
Irrespective of the conflicts between the parties, the record clearly establishes the fact that none of the parties ever intended, nor do they now maintain, that the sum of $31,078.00 was the fair market value of the property at the time of the conveyance to the corporation, and all of the testimony shows that the value of the land far exceeded that sum, the conflict being only to what extent. The record further establishes, without controversy, that the parties had grandiose ideas with respect to the development and sale of the property, the conflict being only to the extent of the development and whether the Magurnos were to furnish all of the development expenses or whether the land was to be mortgaged to furnish the development expenses. The record is also clear that the plans for development and sale of the property were frustrated. The Dobrys say by Magurnos refusal to furnish the money, and the Magurnos say by the Dobrys refusal to mortgage the land to raise the money.
On this record, the Chancellor’s decree neither awarded one-half of the lands to the Magurnos to sustain their theory that the lands were owned by the corporation and that the stock of the corporation was equally divided between the two families, and neither did the decree award all of the lands to the Dobrys under any of their theories. In his unusual division, the Chancellor arrived at a fair market value of the land at the time of the decree, credited the Magurnos with the sum of $31,078.00, plus $19,000.00, as their half of the expenses paid in maintaining the land, which total was approximately one-third of the Chancellor’s opinion of the fair market value of the land, and thus made the division accordingly. For the reasons hereinafter set forth in detail, the decree must be reversed. The first obvious and apparent error is one of mathematics because the decree recites that the Magurnos paid $19,-000.00 as their half of the expenses in maintaining the land, but the decree failed to follow through to credit the Dobrys with a like sum for the other half of the expenses paid by the Dobrys in maintaining the land.
There is substantial, competent testimony, although in conflict, to sustain the Chancellors’ finding that the arrangement between the parties was not that of a loan of money by the Magurnos to the Dobrys and that there was no fraud or overwhelming influence exercised by the Magurnos. On these findings, the decree will not be disturbed.
The Magurnos testified, and the Chancellor found that the parties agreed, to use the corporate form as a medium for carrying out their plans to develop the land. A material and substantial part of the consideration for the conveyance of the land by the Dobrys to the corporation was the agreement by the Magurnos to develop and sell the land and the record *338 clearly establishes a breach of that dependent covenant, which amounted to a breach of the entire contract, and gives the Do-brys the right to rescind:
“A covenant is dependent where it goes to the whole consideration of the contract; where it is such an essential part of the bargain that the failure of it must be considered as destroying the entire contract; or where it is such an indispensable part of what both parties intended that the contract would not have been made with the covenant omitted. Black on Rescission and Cancellation, 2nd ed., Vol. I, pp. SSS, 601. A breach of such a covenant amounts to a breach of the entire contract; it gives to the injured party the right to sue at law for damages, or courts of equity may grant rescission in such instances if the remedy at law will not be full and adequate. Savage v. Horne, 159 Fla. 301, 31 So. 2d 477; 6 Pomeroy, Eq.Juris., Sec. 685.” Steak House, Inc. v. Barnett, Fla.1953, 65 So.2d 736.
The record here clearly establishes that the Dobrys entrusted their valuable lands to the corporation upon the representations of the Magurnos; that they did conceive a development for the great advantage of both parties; and that nothing substantial was done by the Magurnos to accomplish this objective. The circumstances here are similar to those detailed in International Aluminum Window Corp. v. Ferri, Fla.1954, 72 So.2d 31, and Mease v. Warm Mineral Springs, Inc., Fla.App. 1961, 128 So.2d 174.
It is also apparent that even if there was no decree of rescission that the ultimate effect of the transaction was that the parties were engaged in a joint venture that failed.
“A joint adventure has been defined as an agreement among two or more persons to purchase specific property for speculation or resale at a profit, the only distinction between such an agreement and one of partnership being the limited and specific object in view. Drew v. Hobbs, 104 Fla. 427, 140 So. 211, 141 So. 596. The fact that joint adventurers may determine to carry out the purpose of the agreement through the medium of a corporation does not change the essential nature of a relationship. Mendelsohn v. Leather Mfg. Corp., 326 Mass. 226, 93 N.E.2d 537. Compare Fancher v. Rumsey, 121 Fla. 631, 164 So. 688.” Donahue v. Davis, Fla.1953, 68 So.2d 163.
The Chancellor found that the Magurnos subsequently gave an agreement to the Dobrys, whereby the Magurnos agreed to purchase the interest of the Dobrys in the land for $75,000.00. The Chancellor then concluded that this agreement eliminated the essential element of agreement to share losses which is necessary to a joint venture. The effect of this subsequent agreement was nothing more than to establish a method whereby the Dobrys could minimize their loss and it did not eliminate sharing of losses in the joint venture.
In addition to the obvious mathematical error in computing the basis for division of the land, there is no basis in the record for the court’s procedure in establishing its own fair market value to the land and thereby arriving at a division of interest. Since the court chose to ignore the fiction of a separate corporate existence (the record sustains such a conclusion), then the court should have followed through from this finding by decreeing that the Dobrys were, and continued to be, the owners of the land. In compelling equity between the parties, the decree should order the Do-brys to reimburse the Magurnos for all of their expenditures totaling $50,078.00.
The decree is reversed with directions to enter a decree in accordance with this opinion.
ALLEN and SMITH, JJ., concur.
SHANNON, C. J., concurs in judgment of reversal but not in opinion.