TAYLOR, Justice.
The plaintiff below, Appellee here, Tito A. Ferri, had invented a new type of window, and, naturally, wanted to profit from this invention by the manufacture and sale of these windows.
On May 18, 1946, Ferri entered into a contract with the. defendant below, Charles I. Girschowitch, which recited that Girscho-witch “desires to undertake to develop the said product, organize a program for its development, manufacture and distribution, and to finance the same.” The contract, among other things, provides that Girscho-witch “agrees that, if his patent counsel decides that the new improvements and designs are patentable and will be free from infringement of (a patent not here in *32 volved) he will obtain the necessary financing for the enterprise and that he will advance the money in such amounts as and when needed.” This contract indicated the intention of the parties to form a corporation and the sale of some stock to third parties but the maintenance of the control of the corporation by Ferri and, Girscho-witch.
Construing this contract a9 a whole and in the light of the evidence, it is apparent that the intention of the parties was that Ferri should contribute his invention and Girschowitch would furnish the necessary capital and business ability to put the windows into production and on the market.
In the contract Ferri agreed to assign to Girschowitch a one-half interest in any patent secured on the invention.
The patent was promptly applied for, but was not actually issued until several years later.
Promptly after the making of this contract, Girschowitch caused the incorporation of International Aluminum Window Corporation, of which he was president and which he proceeded to dominate. Ferri and Girschowitch on June 26, 1946, in consideration for 255 shares of its stock issued to. each of them, granted to International Aluminum Window Corporation a license to manufacture windows in accordance with Ferri’s invention and the patent application which was then pending.
On June 17, 1949, International Aluminum Window Corporation granted a sub-license to Aero-vent Aluminum Window Corporation, a purported New York Corporation. We say “purported” corporation because, from the evidence, it is doubtful if the incorporation of this company was ever perfected. If it was a legal entity, it clearly was an alter ego of Girschowitch.
From 1946 to the institution of this suit in December, 1951, the invention of Ferri has never been developed to the extent of the sale of a single window, and the only window ever constructed and assembled was one made by Ferri.
This suit was brought by Ferri to cancel the three contracts above mentioned for failure of consideration, and to secure a decree declaring that he, Ferri, was the sole owner of the patent which was issued in the names of Ferri and Girschowitch. The Circuit Court granted the relief prayed, and Girschowitch and the two corporations have appealed.
The consideration that Ferri was to receive for the interest in his invention that he transferred to Girschowitch was the commercial production of windows in accordance with Ferri’s invention. This is what Girschowitch undertook to accomplish. This he failed wholly and completely to do. He neither developed, manufactured, or distributed a single window over a period of more than five years.
The evidence makes it clear that from the beginning the intention of Girschowitch was to act as promoter rather than manufacturer or financier. He made some substantial effort to get others to manufacture and produce the windows, but he failed to get results. Results were what he contracted to produce.
In order to excuse this failure, Girscho-witch offered two claims. First, he says that Ferri failed to furnish necessary drawings and technical data to facilitate the manufacture of the windows. The evidence shows that Ferri did all that was required of him under the contract. Second, he says that materials necessary for the manufacture of the windows could not be obtained due to Government restrictions and war shortages. The evidence fails to substantiate this contention.
As a third reason why complete rescission should not be granted, Girscho-witch asserts that he has expended substantial funds in efforts to place the windows in production and that rescission should not be awarded Ferri without requiring Ferri to place him in status quo by reimbursing him for these expenditures. The answer to this argument is that what Girschowitch agreed to furnish was production of the windows in commercial *33 quantities. He failed to do this. His efforts were directed toward trying to get others to produce, on a royalty basis, the windows that he was obligated to develop, manufacture, and distribute. Had he succeeded, and had the project proved profitable, he would have reaped substantial profits from a minimum of money and effort. He failed, and in failing he likewise failed to perform in any degree his obligations to Ferri.
Ordinarily, the breach of an execu-tory promise or agreement is not regarded as a proper basis for the rescission or cancellation of a contract. But “where the injury caused by the breach of the contract is irreparable, or the damages that might be awarded would be inadequate, or difficult or impossible to determine, the injured party may resort to equity for rescission.” 9 Am. Jur. page 374, See Briggs v. Robinson, 82 Colo. 1. 256 P. 639, 52 A.L.R. 1172.
The position of International Aluminum Window Corporation is no better than that of Girschowitch. As a licensee of the patent, it was merely the tool by which the contract between Ferri and Girscho-witch was to be performed. The only consideration moving to Ferri for his license to International was stock in International. All the parties knew that only by the production and sale of windows under the Ferri invention could this stock be of any value. The failure of the corporation, under these circumstances, to manufacture even a single window for a period of five years demonstrates a failure of consideration justifying rescission. The evidence also furnishes ample basis for a cancellation of the license of International Aluminum Window Corporation because of abandonment. In 69 C.J.S., Patents, § 256, page 791, the rule is stated: “Non-user may show sufficient abandonment to permit the license to be treated as forfeited, and may entitle the licensor to a rescission of the license.”
It would be difficult to find a factual situation more appealing to a Court of Equity for the application of this rule than that presented by the record before us.
An inventor of foreign birth and limited education, without experience in business affairs, entrusts the product of his brain to one who represents himself as being both able and desirous of placing the invention into production for their mutual benefit, licenses his invention to a corporation ostensibly organized for this purpose, receiving only a certificate of stock in the corporation which had no other assets.' The corporation does nothing substantial toward manufacturing the articles invented for a period of more than five years, and indicates no ability or serious intention to manufacture them in the near future. It would be a reproach to our judicial system if, under such circumstances, relief could not be granted.
The decree of the Circuit Court is affirmed.
ROBERTS, C. J., and DREW and BUFORD, JJ., concur.